NO. 12-00-00312-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


KENNETH E. JACKSON, JR.,
§
 APPEAL FROM THE 294TH

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 VAN ZANDT COUNTY, TEXAS

 

 A jury convicted Kenneth E. Jackson, Jr. of aggravated assault. After a punishment hearing,
the trial court sentenced Appellant to imprisonment for fifteen years and one day. Appellant brings
forty-seven issues for our consideration. We affirm.


Background 


 Teresa Ann Davis ("Davis") testified that on July 20, 1997, she and her son, Cody, attended
a cookout at the home of Alan Peterson ("Peterson") and his girlfriend, Nancy Vickers ("Vickers"). 
Davis and Cody were in the backyard when a man approached them and asked if they recognized him. 
Davis testified that, at first, she did not recognize the man because his head was shaved and it was
dark. Later, she realized that the man was Michael Haney ("Haney"), whom she had known "for a
while." After they talked briefly, Davis believed that Haney left the premises. Shortly thereafter, she
heard yelling and the sounds of what she believed to be fighting. Although she could not see who was
yelling because a mobile home was between her and the commotion, she believed Vickers was one of
the people yelling. She then heard six to seven sounds she believed were firecrackers. Davis testified
that after she heard these sounds, Cody was struck by a bullet and she felt a bullet go through her leg. 
She stated that the bullet grazed Cody's chest and right wrist. She also stated that there were bullet
holes in the mobile home that was between them and the road and that the bullets went through the
mobile home and struck them. Davis testified that she does not know Appellant, that she did not see
Appellant on July 20, 1997, and that she did not see who shot the gun that night. Cody testified that
he had been shot "across" his stomach and wrist. He stated that he heard three or four gunshots but
did not see who fired the gun.

 Vickers testified that at one point during the cookout, Peterson and David Holland ("Holland")
left to get cigarettes and some additional lawn furniture. While they were gone, Haney approached
her and asked if he could wait for Peterson. When Peterson returned, Vickers went to tell him that
Haney was there to see him. At that point, she noticed an individual get out of the passenger's side
of a "double cab green truck" that Haney and this individual had driven to their home. Vickers
identified Appellant as the person she observed getting out of the truck. She stated that she did not
know Appellant at that time. She testified that Appellant shook Peterson's hand and said, "You don't
recognize me, do you?" Vickers testified that as they were shaking hands, Appellant attempted to hit
Peterson but instead he hit her. She then hit Appellant with her beer bottle. As Vickers was telling
Haney and Appellant to leave their yard, Appellant told Haney to get in the truck. Haney got into the
driver's side, while Appellant got into the passenger's side. Vickers then observed Appellant stick a
rifle out the driver's side window of the truck. She heard shots and Davis and Cody scream. She then
went around the side of the house and saw that Cody and Davis had been shot. She testified that the
bullets went through a trailer on the premises and into the back yard where they struck Cody and
Davis.

 Holland testified that when he and Peterson returned from the store, two people came up to
Peterson. He did not recognize either one of them, but in court he identified Appellant as one of the
men. Holland stated that as Appellant and Peterson were shaking hands, Appellant pulled Peterson
toward him and either hit or kicked him. Haney and Appellant then walked to their truck. Appellant
got into the passenger's side of the truck. Holland testified that after Haney and Appellant got into the
truck, shots were fired from the vehicle. He stated that he heard at least ten shots from what sounded
like a .22 caliber firearm. Holland did not actually see the gun fired and does not know who fired the
gun. After the shots were fired, Holland discovered that Cody had been grazed by one of the bullets
and Davis had been shot through the leg.

 Haney testified that he had been convicted for aggravated assault based on the incident that
occurred on July 20, 1997. Haney testified that on July 20, 1997, he and Appellant drove over to
Peterson's home in Appellant's green, extended cab pickup. He stated that he drove and that they
arrived a little before dark. He testified that it was Appellant's idea to go to Peterson's house to collect
some money Peterson owed Appellant. When they arrived, Haney got out of the pickup, talked with
several people and learned that Peterson was not home. Haney then returned to the pickup and told
Appellant that Peterson was not home. As he was doing do, Peterson arrived.

 Haney and Appellant got out of the pickup and approached Peterson. Haney testified that as
Appellant and Peterson were shaking hands, Appellant kicked Peterson causing Peterson to double
over and a fight ensued. Haney stated that he thought Appellant continued to hit Peterson after he
kicked him. He testified that he attempted to break up the fight. According to Haney, Vickers hit
Appellant with a glass beer mug. Haney stated that he thought Vickers said "I'm going to get a gun." 
Haney and Appellant then returned to the pickup. Haney got into the driver's side while Appellant got
into the passenger's side of the truck. Haney testified that as he started driving off, Appellant told him
to duck and then fired four to five shots from a .22 caliber rifle out the driver's side window in
Peterson's direction. Haney stated that after Appellant fired the shots, he drove off. 

 Peterson also testified. He stated that he has been convicted of possession of a controlled
substance and possession of a weapon and that he is currently an inmate in the Institutional Division
of the Texas Department of Criminal Justice. He also stated that prior to his confinement, he was a
drug dealer. Concerning July 20, 1997, Peterson testified that when he and Holland returned from the
store, he noticed Haney in the yard. He testified that he then observed Appellant get out of a pickup
and approach him. He did not recognize Appellant immediately. Appellant shook his hand and said,
"You don't recognize me, do you?" At that point, Appellant drew back like he was going to hit
Peterson. As he did so, Vickers hit him with a glass of tea or a beer bottle. Then, Appellant started
kicking Peterson. Peterson testified that Haney and Appellant then proceeded to the truck. He saw
Haney roll the window down and lean forward. He then heard five to six shots, which he eventually
recognized as being small caliber rifle fire. After the shots were fired, Haney and Appellant drove off. 
Peterson testified that he then heard Cody screaming, "I've been shot," and called the sheriff's
department. He testified that the shots were fired in his general direction and that one of the bullets
hit a taillight on a truck near where he was standing. 

 A person commits aggravated assault if the person commits assault as defined in section 22.01
of the Texas Penal Code and the person uses or exhibits a deadly weapon during the commission of
the assault. Tex. Pen. Code Ann. § 22.02 (Vernon 1994). Section 22.01 provides that a person
commits assault if he intentionally, knowingly or recklessly causes bodily injury to another. Tex. Pen.
Code Ann. § 22.01 (Vernon Supp. 2002). The indictment in this case alleged that Appellant "did
intentionally, knowingly, or recklessly cause bodily injury to cody clark (sic) by shooting him with a
firearm; and in the course of the same criminal episode, the defendant used and exhibited a deadly
weapon, namely a firearm . . ." The jury found Appellant guilty as alleged in the indictment and this
appeal followed.


Corroboration of Accomplice Evidence


 In the charge, the jury was instructed that Haney was an accomplice. In issue six, Appellant
argues that the non-accomplice evidence is insufficient to corroborate Haney's testimony. 

Standard of Review

 A conviction cannot be had upon the testimony of an accomplice witness unless corroborated
by other evidence tending to connect the accused to the offense. Tex. Code Crim. Proc. Ann. art.
38.14 (Vernon 1979). To determine whether an accomplice's testimony is sufficiently corroborated,
we eliminate from consideration the testimony of the accomplice witness and examine the remaining
evidence to ascertain if there is evidence which tends to connect the accused to the offense. 
Hernandez v. State, 939 S.W.2d 173, 176 (Tex. Crim. App. 1997); Cockrum v. State, 758 S.W.2d
577, 581 (Tex. Crim. App. 1988). The combined cumulative weight of the incriminating evidence
furnished by the non-accomplice witnesses may be sufficient if it tends to connect the accused to the
offense. Reed v. State, 744 S.W.2d 112, 126 (Tex. Crim. App. 1988). It is not necessary that the
corroborative evidence directly link the accused to the offense or be sufficient in itself to establish guilt
beyond a reasonable doubt. Id.; see also Hernandez, 939 S.W.2d at 176. All facts and circumstances
may be looked to as furnishing the necessary corroboration. Mitchell v. State, 650 S.W.2d 801, 807
(Tex. Crim. App. 1983). "The corroborative evidence may be circumstantial or direct." Reed, 744
S.W.2d at 126. 

Analysis

 Haney testified that as he started driving off, Appellant told him to duck and then fired four
to five shots from a .22 caliber rifle out the driver's side window in Peterson's direction. Vickers
testified that she saw Appellant fire shots out the driver's side window of the truck. Peterson testified
that after he observed Appellant get into the passenger's side of the truck, he saw Haney roll down the
window and lean forward. He then heard small caliber rifle fire. Holland testified that Appellant got
into the passenger's side of the pickup after the fight. He then heard at least ten shots from what
sounded like a .22 caliber firearm. 

 In his brief, Appellant fails to recognize that Vickers testified that she saw Appellant fire the
rifle out the driver's side window. Appellant only argues that Peterson's testimony is unworthy of
belief because Peterson was Haney's friend and a drug dealer. Whether a witness was or was not
believable is not an appropriate analysis under article 38.14. Cathey v. State, 992 S.W.2d 460, 462-63
(Tex. Crim. App. 1999). "All the law requires is that there be some non-accomplice evidence which
tends to connect the accused to the commission of the offense." Hernandez, 939 S.W.2d at 178. 
Reasonable jurors could conclude that the non-accomplice evidence, detailed above, tended to connect
Appellant to the offense. Id.; see also Cox v. State, 830 S.W.2d 609, 612 (Tex. Crim. App. 1992). 
Accordingly, we hold that such non-accomplice evidence sufficiently corroborated Haney's testimony
under article 38.14. Issue six is overruled. 

 

Sufficiency of the Evidence 


 In issues one and three, (1) Appellant contends that the evidence is legally insufficient to sustain
his conviction. In issues two, four and five, (2) Appellant contends that the evidence is factually
insufficient to sustain his conviction. 

Legal Sufficiency 

 The standard of review for legal sufficiency of the evidence is whether, viewing the evidence
in the light most favorable to the jury's verdict, any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct.
2781, 2789, 61 L. Ed. 2d 560 (1979); Whitaker v. State, 977 S.W.2d 595, 598 (Tex. Crim. App. 1998). 
An appellate court should uphold the jury's verdict "unless it is found to be irrational or unsupported
by more than a mere modicum of evidence." Moreno v. State, 755 S.W.2d 866, 867 (Tex. Crim. App.
1988). All conflicts in the evidence should be resolved in favor of the verdict, and every reasonable
inference indulged. Sneed v. State, 803 S.W.2d 833, 837 (Tex. App.-Dallas 1991, pet. ref'd). The
jury is the exclusive judge of the credibility of the witnesses and of the weight to be given their
testimony. Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). Likewise, reconciliation
of conflicts in the evidence is within the exclusive province of the jury. Losada v. State, 721 S.W.2d
305, 309 (Tex. Crim. App. 1986). 

 Viewed in the light most favorable to the verdict, the evidence shows that Haney and Appellant
drove to Peterson's home so that Appellant could collect a debt Peterson owed Appellant. Appellant
approached Peterson and either attempted to hit Peterson or kicked him causing a fight to ensue. 
Haney and Appellant then returned to Appellant's truck. Appellant got into the passenger's side of
the truck, picked up a rifle, and fired several shots out the driver's side window striking Cody. Having
reviewed the record, we conclude that a rational trier of fact could have found the elements of
aggravated assault beyond a reasonable doubt. Accordingly, the evidence is legally sufficient to
sustain Appellant's conviction. Issues one and three are overruled.

Factual Sufficiency 

 When reviewing the factual sufficiency of the evidence, we must ask whether a neutral review
of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously
weak as to undermine confidence in the jury's determination, or the proof of guilt, although adequate
if taken alone, is greatly outweighed by contrary proof. Johnson v. State, 23 S.W.3d 1, 11 (Tex. Crim.
App. 2000). We review the evidence weighed by the jury that tends to prove the existence of the
elemental fact in dispute and compare it with the evidence that tends to disprove that fact. Jones v.
State, 944 S.W.2d 642, 647 (Tex. Crim. App. 1996). We review the fact finder's weighing of the
evidence and are authorized to disagree with the fact finder's determination. Clewis v. State, 922
S.W.2d 126, 133 (Tex. Crim. App. 1996). This review must employ appropriate deference to prevent
an appellate court from substituting its judgment for that of the fact finder, and any evaluation should
not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility to
be given to the testimony of the witnesses. Jones, 944 S.W.2d at 648. 

 Appellant's argument under these issues basically consists of an attack on the credibility of
Haney and Peterson. The jury, not this court, is the sole judge of the weight and credibility to be given
to the testimony of the witnesses. Id. Further, Vickers testified that she saw Appellant fire the weapon
out the driver's side window. Holland provided circumstantial evidence showing that Appellant was
the shooter. 

 Appellant also emphasizes that (1) Davis did not see the events that proceeded the shooting,
(2) Davis saw Haney, but did not see Appellant on the night in question, (3) and (3) Davis could not
identify Appellant as being at Peterson's house on July 20, 1997. (4) He further contends that the
evidence identifying him as the perpetrator was unreliable. The jury was free to weigh the fact that
Davis could not see certain events and her inability to identify Appellant. Id.; Cain, 958 S.W.2d at
410. In light of the testimony of Haney, Vickers, Peterson and Holland, we cannot conclude that
Davis' failure to see certain events and her inability to identify Appellant is determinative on the issue
of the identity of the perpetrator. The fact that Davis saw Haney on the night in question, but did not
see Appellant, does not contradict or undermine the remainder of her testimony nor that of any other
witness. Further, there was ample evidence identifying Appellant as the perpetrator and because the
jury is free to weigh the credibility of the witnesses, we cannot say such evidence was unreliable.

 In addition, Appellant complains of the absence of scientific evidence showing that an assault
occurred or that a firearm was used. Appellant provides no authority to support the proposition that
the State must provide "scientific evidence" in order to obtain a conviction. There is evidence,
detailed above, that Appellant fired a weapon in Peterson's direction. After the shooting, numerous
witnesses testified that they heard Cody scream and then discovered that Cody and Davis had been
struck by the bullets. Davis and Cody testified that they sought treatment for their wounds at the
hospital. Peterson testified that he saw a bullet hole in a taillight and Davis and Vickers testified that
they observed bullet holes in a mobile home that was on the property. Finally, Appellant complains
that no weapon was recovered. The jury was free to weigh the fact that the weapon was not recovered
and we will not interfere with that determination. 

 After a neutral review of all the evidence, we conclude that the proof of guilt is neither so
obviously weak as to undermine confidence in the outcome nor greatly outweighed by contrary proof. 
Accordingly, the evidence is factually sufficient to sustain Appellant's conviction for aggravated
assault. Issues two, four and five are overruled. (5) 


Ineffective Assistance of Counsel


 In issue seven, (6) Appellant asserts that he did not receive effective assistance of counsel at trial. 
Appellant contends that his trial counsel dissuaded him from testifying at trial. He argues that he
would have testified that shots were fired into his vehicle by individuals at the scene thereby raising
the issue of self-defense. He further contends that although he presented his attorney with evidence
of self-defense, his attorney failed to investigate this evidence and failed to raise the issue of self-defense at trial. Appellant contends that his attorney's failure to investigate and raise self-defense
resulted in the jury not being instructed on this issue. In his first amended motion for new trial,
Appellant contended, in effect, that his counsel was ineffective. He also filed an affidavit stating much
of what is related above concerning his desire to testify. 

Applicable Law

 To show his trial counsel was ineffective, Appellant must meet the two-pronged test articulated
in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). First, Appellant
must demonstrate that counsel's performance was deficient. Strickland, 466 U.S. at 687, 104 S. Ct.
at 2064. In order to satisfy this prong, Appellant must demonstrate that counsel's performance fell
below an objective standard of reasonableness, as judged on the facts of a particular case and viewed
at the time of counsel's conduct. Id. at 688-90, 104 S. Ct. at 2064-66. Further, counsel is presumed
to have rendered adequate assistance and made all significant decisions in the exercise of reasonable
professional judgment. McFarland v. State, 928 S.W.2d 482, 500 (Tex. Crim. App. 1996). Second,
Appellant must show that counsel's performance prejudiced his defense at trial. Strickland, 466 U.S.
at 692, 104 S. Ct. at 2067. "It is not enough for the Appellant to show that the errors had some
conceivable effect on the outcome of the proceeding." Id. at 693, 104 S. Ct. at 2067. Rather, he must
show there is a reasonable probability that the result of the proceeding would have been different but
for the errors made by counsel. Id. at 694, 104 S. Ct. at 2068. "A reasonable probability is a
probability sufficient to undermine confidence in the outcome." Id. "Any allegation of ineffectiveness
must be firmly founded in the record, and the record must affirmatively demonstrate the alleged
ineffectiveness." McFarland, 928 S.W.2d at 500. Failure to make the required showing of either
deficient performance or sufficient prejudice defeats the ineffectiveness claim. Id. 

 Appellant has a difficult burden in proving ineffective assistance of counsel. As the court of
criminal appeals, in Thompson v. State, 9 S.W.3d 808 (Tex. Crim. App. 1999), explains:


 A substantial risk of failure accompanies an appellant's claim of ineffective assistance on direct appeal. 
Rarely will a reviewing court be provided the opportunity to make its determination on direct appeal with
a record capable of providing a fair evaluation of the merits of the claim involving such a serious
allegation. In the majority of instances, the record on direct appeal is simply undeveloped and cannot
adequately reflect the failings of trial counsel. 


Id. at 813-14 (citations omitted). Thus, to successfully demonstrate counsel's ineffectiveness, an
appellant must present evidence, usually through a motion for new trial or a habeas corpus proceeding,
illustrating trial counsel's strategy. Id.; Kemp v. State, 892 S.W.2d 112, 115 (Tex. App.-Houston [1st
Dist.] 1994, pet. ref'd). In this case, Appellant did file a motion for new trial alleging ineffective
assistance. No hearing, however, was held on that motion. Thus, we have no evidence from counsel's
perspective concerning (1) what counsel and Appellant discussed, (2) what investigation counsel may
have conducted, and (3) counsel's trial strategy. Generally, when the record contains no evidence of
the reasoning behind counsel's conduct, we cannot conclude counsel's performance was deficient. See
Jackson, 877 S.W.2d at 771. If there is any plausible basis for trial counsel's actions, we are not
required to speculate on the reasons for counsel's actions when confronted with a silent record. Id.;
McCoy v. State, 996 S.W.2d 896, 900 (Tex. App.-Houston [14th Dist.] 1999, no pet.). However, if
a silent record demonstrates that no reasonable trial attorney could have made the complained of trial
decisions, to hold counsel ineffective is not speculation. See Vasquez v. State, 830 S.W.2d 948, 950-51 (Tex. Crim. App. 1992); McCoy, 996 S.W.2d at 900.

Analysis

 With regard to Appellant's contention that his attorney dissuaded him from testifying, we note
initially that there is no testimony from Appellant's trial counsel concerning the discussions he may
have had with Appellant. Further, as the State points out, there are many reasons why an attorney may
advise his client not to testify. Having reviewed the record, we conclude that it would not have been
unreasonable for counsel to advise Appellant not to testify for at least two reasons. During a pre-trial
hearing, the State noted its belief that witnesses would testify that Appellant's motivation for
confronting Peterson related to a prior drug transaction between Appellant and Peterson. The State
informed the trial court that the testimony would show that Appellant was unhappy with the quality
of a controlled substance he had received from Peterson and that Appellant's purpose in approaching
Peterson on the night in question was to demand the return of the money he had given Peterson. The
State indicated that while it would attempt to avoid eliciting testimony related to the prior drug
transaction, such testimony could become admissible at some point during the trial. Appellant's
attorney stated that he would object to the introduction of extraneous offenses. With the potential for
evidence of a prior drug transaction between Appellant and Peterson coming into evidence, it would
not be unreasonable for Appellant's attorney to suggest that Appellant not testify. Counsel may have
believed that if Appellant testified, the door would be open to the introduction of evidence of the prior
drug transaction.

 Another reason counsel may have suggested that Appellant not testify is Appellant's criminal
history. At the sentencing hearing in this case, Appellant testified that he had been placed on probation
for burglary in 1982 or 1983. He testified that he served six weeks of his probation before it was
revoked because he committed theft. Appellant also testified that he pleaded guilty to misdemeanor
assault in 1991. Further, Appellant testified that he committed the offense of possession of
methamphetamine on February 7, 1998, after the date of the aggravated assault at issue here. Finally,
he stated that was placed on probation for that offense on August 18, 2000. In light of Appellant's
criminal history, we cannot consider it unsound trial strategy if counsel did suggest to Appellant that
he not testify at the guilt-innocence stage of the trial.

 We now turn to Appellant's claim that his attorney failed to investigate and raise the issue of
self-defense. Because the record does not contain any evidence of the investigation Appellant's
counsel may have conducted, we have no way of determining whether his investigative techniques fell
below prevailing professional norms. Concerning Appellant's claim that his attorney failed to raise
the issue of self-defense, we note that trial counsel did attempt to elicit evidence of self-defense. 
Appellant's attorney asked Davis whether she heard Vickers say she was going to get her gun, to which
she answered, "No." Davis was also asked if she knew whether Vickers or Peterson own a weapon,
to which she replied that she did not. Appellant's attorney cross-examined Vickers about her
involvement in the fight between Appellant and Peterson in an attempt to portray her as the aggressor. 
He got Vickers to admit that she had hit Appellant with a beer bottle after Appellant kicked Peterson.
He attempted unsuccessfully to get her to admit that she had kicked Appellant and that other people
at the cookout had kicked or hit Appellant. Counsel also attempted unsuccessfully to get Vickers to
admit that she said "I'm going to get my gun," that she owned a gun and that Peterson owned a gun. 
Further, Appellant's attorney questioned Holland in an attempt to determine whether anyone beside
Appellant and Peterson were involved in the scuffle and whether Vickers hit anybody. Holland stated
that no one else was involved in the struggle and Vickers involvement consisted of screaming and
yelling. To counsel's questions, Haney responded that he heard somebody say that she was going to
get her gun, and he believed it was Vickers. In response to counsel's questions, Peterson testified that
he did not hear Vickers say that she was going to get a gun. 

 Appellant claims that he wanted to testify that shots were fired in his direction. We have
previously discussed only two of the reasons counsel may have suggested that Appellant not testify. 
In light of the fact that no other witness testified that shots were fired at Appellant and only Haney
testified that anyone said anything about getting a gun, it would not be unreasonable for counsel to
conclude that Appellant's testimony concerning shots being fired would not appear credible. And
because Appellant would have had to testify in order to raise the issue of self-defense, Appellant's
attorney could have properly determined that Appellant would not be credible enough to subject
Appellant to cross-examination on his criminal history and the extraneous offense that apparently led
him to go to the Peterson's house on July 20, 1997. Having reviewed the record, it is clear than rather
than relying on self-defense, Appellant's attorney attempted to portray the testimony of the State's
witnesses as a "conspiracy." For example, Appellant's attorney questioned Haney about his friendship
with Peterson and about whether he suspected Appellant had been involved in an affair with his wife. 
For all the foregoing reasons, we conclude that Appellant has failed to establish that his attorney's
performance fell below an objective standard of reasonableness. (7) Accordingly, issue seven is
overruled.


Remaining Issues


 During voir dire, the State discussed the doctrine of "transferred intent." Appellant did not
object to the State's discussion. In issue eight, (8) Appellant argues that the "State committed reversal
(sic) error during voir dire in instructing the jury concerning . . . transferred intent" because
"transferred intent was not included . . . in the indictment." We interpret Appellant's issue to complain
of the State's discussion of this theory at voir dire. (9) Appellant failed to object at trial and has,
therefore, failed to preserve this issue for appellate review. Tex. R. App. P. 33.1(a)(1)(A). Further,
in light of our disposition of issues eleven, twelve, sixteen, seventeen, and nineteen, it was not
inappropriate for the State to discuss transferred intent at voir dire even though this theory was not set
forth in the indictment. 

 In issue nine, Appellant argues that he is entitled to a reversal because "several documents are
missing from the record" citing Tex. R. App. P. 34.5(d) and (e). As support for his position, Appellant
cites the following statement from the trial judge: "As we work through here today, every word that
I have spoken so far and that lawyer's and you may speak throughout this entire process, until its
concluded, is being recorded." The court explained that this was important because sometimes truck
noise made it difficult to hear in the courtroom and he requested that the jurors inform him if they
could not hear. We fail to see how the comment cited by Appellant has any connection to the alleged
missing documents. In addition, Appellant fails to explain which documents are missing, whether he
made any efforts to obtain the missing documents pursuant to Tex. R. App. P. 34.5(c)(1), or how these
missing documents might affect the disposition of the case. Issue nine is overruled. 

 In issue ten, Appellant complains that jurors "committed misconduct" during voir dire by
considering his failure to testify. Appellant's argument under this issue contains no citations to the
record and fails to apply the applicable law to the facts of this case. Accordingly, issue ten is
overruled. Tex. R. App. P. 38.1(h). 

 In issue eleven, Appellant contends that the indictment was void because it did not include
transferred intent. Section 6.04(b)(2) of the Texas Penal Code sets forth the doctrine of transferred
intent. Norris v. State, 902 S.W.2d 428, 436-39 (Tex. Crim. App. 1995). This section provides that
a "person is nevertheless criminally responsible for causing a result if the only difference between what
actually occurred and what he desired, contemplated, or risked is that a different person or property
was injured, harmed, or otherwise affected." Tex. Pen. Code Ann. § 6.04(b)(2) (Vernon 1994). The
jury was instructed on this theory in the charge. 

 Transferred intent is raised when there is evidence a defendant acted with the requisite mental
state intending to injure or harm a specific person but injures or harms a different person or both. 
Norris, 902 S.W.2d at 436-39. Contrary to Appellant's assertion, the theory of transferred intent need
not be alleged in the indictment for it to have later application in a case. Norris, 902 S.W.2d at 436
n.10; Dowden v. State, 758 S.W.2d 264, 274 (Tex. Crim. App. 1988). Issue eleven is overruled.

 Prior to the introduction of evidence, Appellant's trial counsel moved to quash the indictment
because the State had not set forth transferred intent in the indictment. The trial court denied the
motion. In issues twelve, sixteen, seventeen and nineteen, (10) Appellant argues that trial court erred in
failing to quash the indictment. As explained above, transferred intent need not be alleged in the
indictment to have later application in a case. Id. Thus, the trial court did not err in overruling the
Appellant's motion to quash. Issues twelve, sixteen, seventeen and nineteen are overruled. 

 Appellant's statement of issue thirteen appears to complain of the admission of extraneous
offenses. Appellant's one sentence argument under this issue, however, merely states a portion of the
law concerning improper argument by counsel. Appellant's argument fails to contain any citations to
the record and fails to apply the law of extraneous offenses or improper argument to the facts at hand. 
Thus, issue thirteen is overruled. Tex. R. App. P. 38.1(h).

 In issue fourteen, Appellant asserts that the trial court erred in not requiring the State to
produce evidence requested via a discovery motion. Specifically, Appellant contends that he did not
receive notice of prior convictions of the State's witnesses in a timely manner and that when the State
did produce this evidence, he had only minutes to review the convictions. 

 The record reveals that prior to the introduction of evidence, Appellant informed the trial court
that he had requested prior convictions of witnesses from the State, but they had not been provided. 
The court directed the State to provide that information and allowed Appellant to review the
information during a recess. After the recess, Appellant announced ready. We first note that
Appellant's request was granted by the trial court. Thus, Appellant cannot complain that he trial court
did not require the State to provide him with the requested information. Further, other than making
a request for witnesses' criminal histories, Appellant did not object to the timeliness of the State's
notice. Once he was provided with the requested information, Appellant did not object to the amount
of time the court allowed him to review the information. Therefore, the issues of the timeliness of the
notice and the amount of time allowed the review the convictions have not been preserved for appellate
review. Tex. R. App. P. 33.1(a)(1)(A). Even had such objections been made, we would find no
reversible error as Appellant makes no attempt to show how the alleged errors had any effect on the
verdict. Tex. R. App. P. 44.2(b).

 In issues fifteen, twenty, twenty-one, twenty-two, twenty-three, twenty-six, twenty-seven,
twenty-eight and thirty-one through forty-six, Appellant lists various issues for the court's
consideration. We interpret issues twenty-two, twenty-three, twenty-six, twenty-eight, thirty-one,
thirty-two, thirty-four, thirty-five, thirty-six, thirty-eight, forty, forty-one, forty-three, forty-four, forty-five, forty-six as attacks on the factual sufficiency of the evidence. This conclusion is reinforced
because in his argument, Appellant lumps all of these issues together and essentially argues that the
evidence is factually sufficient to sustain his conviction. We have previously held that the evidence
is factually sufficient for the reasons discussed in the "Corroboration of Accomplice Evidence" and
"Sufficiency of the Evidence" sections set forth above. Nothing in these additional issues alters that
conclusion. While the remainder of these appear to address matters other than factual sufficiency, in
his argument, Appellant fails to provide citations to the record, fails to cite applicable authority and
fails to apply the law to the facts of this case. Tex. R. App. P. 38.1(h). For the foregoing reasons,
issues fifteen, twenty, twenty-one, twenty-two, twenty-three, twenty-six, twenty-seven, twenty-eight
and thirty-one through forty-six are overruled.

 In issues eighteen, twenty-four, and twenty-nine, Appellant asserts that he did not receive the
effective assistance of counsel at trial. In issue eighteen, Appellant complains that his counsel's
examination of the venire panel was inadequate. In his argument under this issue, however, Appellant
provides no citations to the record and no citations to the law regarding the examination of prospective
jurors. Accordingly, issue eighteen is overruled. Tex. R. App. P. 38.1(h). 

 In issue twenty-four, Appellant contends that his attorney's cross-examination of Cody was
inadequate. He argues, in essence, that his attorney failed to present evidence that Cody had previously
given a different cause for his injuries. The record shows that Appellant's attorney questioned Cody
about the fact that he had previously told his father that his injuries were caused when he fell on some
wood with nails in it, rather than by a bullet. He also questioned Davis extensively about the fact that
Cody told his father that he was injured when he fell on some wood. Thus, Appellant's attorney did
present the fact that Cody had previously explained his injuries a different way. Counsel's
performance was not deficient and we overrule issue twenty-four. 

 In issue twenty-nine, Appellant argues that his attorney was deficient in failing to request that
a self-defense instruction be included in the charge. Appellant points out that Vickers testified that
she hit Appellant and that she chased and yelled at Appellant. The evidence shows that numerous
witnesses testified that Appellant initiated the fight. Vickers did hit Appellant, apparently in an
attempt to protect Peterson. Only Haney testified that Vickers said something about a gun and he was
not sure that it was Vickers that said it. Appellant and Haney returned to Appellant's truck from which
Appellant fired a weapon in Peterson's direction hitting Davis and Cody. As discussed above,
Appellant's counsel attempted to elicit evidence of self-defense from almost every witness. Appellant
cites to no authority on the law of self-defense in an attempt to show that his attorney acted
unreasonably in not requesting an instruction on self-defense. In light of the absence of evidence in
the record showing that Appellant acted in self-defense, we conclude that the trial court would not
have granted a self-defense instruction had it been requested by Appellant. Matthews v. State, 960
S.W.2d 750, 753 (Tex. App.-Tyler 1997, no pet.) (it is not ineffective assistance of counsel when
counsel fails to do that which it would be futile to do). Further, even if we were to find counsel
deficient for any of the reasons stated in issues eighteen, twenty-four, and twenty-nine, such
deficiencies would not lead to reversible error because we cannot conclude that there is a reasonable
probability that the result of the proceeding would have been different. Issue twenty-nine is overruled.

 Appellant's statement of issue twenty-five concerns the allegedly erroneous admission of
hearsay. Appellant's statement of issue forty-two asserts that the trial court erred in conducting a
bench conference off the record because he had previously instructed the jury that everything that was
said would be put on the record. His argument under both of these issues concerns the effect of the
trial court's cumulative errors, rather than the matters stated in these issues. Tex. R. App. P. 38.1(h). 
In his argument, Appellant argues that the trial court's cumulative errors denied him due process under
the federal constitution and due course of law under the Texas Constitution. Having found that the
trial court did not commit any errors, we reject this contention. Issues twenty-five and forty-two are
overruled. 

 Appellant presents no argument concerning issue thirty. Accordingly, issue thirty is overruled. 
Tex. R. App. P. 38.1(h).

 Issue forty-seven is merely a statement and presents nothing for our review. Accordingly, we
overrule issue forty-seven. Tex. R. App. P. 38.1(h).


Conclusion 


 Having overruled all of Appellant's issues, the judgment of the trial court is affirmed. 




 SAM GRIFFITH 

 Justice



Opinion delivered March 11, 2002.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.





















(DO NOT PUBLISH)
1. Appellant argues issues one through five together. In her listing of the issues presented, we cannot
distinguish any difference between issues one and three. Thus, we will address them together.
2. As noted in footnote one, Appellant argues issues one through five together. In issue four, Appellant
complains that the trial court erred in overruling his motion for new trial because the evidence was factually
insufficient. In issue five, Appellant contends that his first amended motion for new trial was erroneously overruled
because the identification of Appellant "was so unreliable that it was insufficient to prove the State's case and the
verdict was contrary to the evidence." There is nothing in the record showing that a hearing was held on either
motion for new trial. Nor is there an order in the record denying these motions. There is only an order on
Appellant's motion for new trial marked "returned unsigned." Thus, we interpret these issues as attacks on the
factual sufficiency of the evidence. 
3. Apparently, Appellant argues that this testimony compels the conclusion that Haney, rather then
Appellant, was the shooter. Even if we assume this evidence somehow contradicted the other witnesses' testimony,
the jury is free to resolve contradictory evidence. Cain v. State, 958 S.W.2d 404, 408-09 (Tex. Crim. App. 1997). 
4. Without further explanation, Appellant points out that there is no evidence of a preexisting relationship
between him and Davis. We fail to see how this is relevant to the issues at hand. 
5. Under these issues, Appellant makes a passing reference to his affidavit, which is attached to his first
amended motion for new trial, wherein he states that shots were fired into his vehicle. Since this evidence was not
presented to the jury, it is inappropriate to discuss in a factual sufficiency review. We will, however, discuss
Appellant's contention that he was prevented from presenting this testimony on the advice of his counsel in our
discussion of issue seven.
6. In issue seven, Appellant complains that the trial court erred in overruling his first amended motion for
new trial in which he complained that he was dissuaded from testifying and his claim of self-defense was not
presented. There is no record of a hearing on the motion nor is there an order denying the motion. Under the
argument for this motion, Appellant focuses on a claim of ineffective assistance. Consequently, we interpret this
issue as an attack of the effectiveness of his trial counsel. 
7. Even if Appellant was able to demonstrate that counsel's conduct was deficient, we conclude that
Appellant could not demonstrate, in light of the evidence detailed above, that there is not a reasonable probability
that the outcome of the trial would have been different. 
8. Appellant's original brief contains seven issues. His supplemental brief contains forty issues. For the
sake of clarity, we will refer to the issues in sequential order. 
9. Under this issue, Appellant cites a civil case for the proposition that the trial court should have included
"new and producing cause" in its definition of transferred intent. In addition to being multifarious, Appellant fails to 


Footnote continued.

provide any authority showing that this civil case controls the proper definition of transferred intent in a criminal
case. Tex. R. App. P. 38.1(h). 
10. Unless otherwise indicated, the grouping of issues in this section are Appellant's own.