Randy Wayne SWANN, Appellant,

v.

The STATE of Texas, State.

No. 2–87–165–CR.

Court of Appeals of Texas,
Fort Worth.

May 19, 1988.

See also, 737 S.W.2d 623.

Fred B. Nies, II, Denton, for appellant.

Jerry Cobb, Dist. Atty., and Gwinda L. Burns, Asst. Dist. Atty., Denton, for State.

Before BURDOCK, JOE SPURLOCK, II and KELTNER, JJ.

OPINION

KELTNER, Justice.

Randy Wayne Swann appeals his conviction by jury of the offense of injury to a child on grounds the State did not lay a proper predicate for admission of his previously recorded statement.

Swann was convicted by a jury of the offense of injury to a child. *See* TEX. PENAL CODE ANN. sec. 22.04 (Vernon Supp.1988). The court assessed punishment at fifty-five years in the Texas Department of Corrections. We affirm the judgment of the trial court.

At the time the offense occurred, Swann lived with Melody McLean and her two minor children.

On February 26, 1987, Swann took 16–month–old Thomas McLean to the Lewisville Memorial Hospital. The child was badly burned. The burns were so severe that the child's color was changing and he was barely conscious. Medical experts testified that Thomas's burns were caused by submersion in hot liquid.

At trial, Swann testified in his own behalf. He admitted that he initially fabricated a story to the hospital staff and police that he accidentally knocked a pot of boiling water off the kitchen stove, causing

injury to the child. Swann testified that the true facts were that Thomas was burned when Swann attempted to wash the baby in the bathtub. He testified that Thomas squirmed, slipped from his hands and fell into the hot water in the tub.

The Lake Dallas Police Department tape recorded Swann's first version of the episode. The tape was made at the police station, after Swann had taken officers to the McLean residence and demonstrated how the accident allegedly occurred. A warrant for his arrest was issued the next day.

During the trial, Swann was cross-examined extensively by the State on his admitted fabrication of the original version. Swann admitted that the first story was bogus and insisted that the second version was the true and complete story. Thereafter, the following exchange occurred:

Q Isn't it true that you said on that tape "I swear to God on that baby's life that I'm telling the truth"?

A I might have said that saying I did not intentionally burn him.

Q Well, would you like for me to play it back for you?

A It's up to my lawyer.

. . . .

Q Mr. Swann, I'm going to play for you a portion of this tape, and I would like for you to listen to it.

(Tape played.)

"That's the way it happened, I swear to God on that baby's life and I love him to death." Was that you?

A I remember the conversation. I couldn't swear that that is my voice, but it probably is.

. . . .

Q You said, "That's the way it happened I swear to God on my baby's life." That's what it said on this tape wasn't it, Mr. Swann?

A Yeah.

Q So swear to God means nothing to you, does it?

A I believe in God.

Q You swore to God that night that that story was true and it wasn't, was it?

A I lied that whole day.

Q And you're lying now?

A No, ma'am.

In his sole point of error, Swann contends the trial court erred in admitting the above testimony because the portion allowed "could have been taken out of sequence" and that the chain of custody of the tape was not shown by the State.

■ Swann does not cite us any authority for that portion of his point of error that contends that the portion of the tape played "could have been taken out of sequence." The record reflects that the entire tape recording was available to Swann's lawyer both before and during trial. However, that tape recording is not part of our record. As a result, Swann has not presented us with record on which we can reach a decision of whether the portion played was taken out of context. As a result, Swann's claim that the portion of the tape played to the jury "could have been taken out of sequence" is overruled.

■ Swann also complains that the statement was not admissible without a predicate demonstrating: (1) the recording device used was capable of taking testimony; (2) the operator of the device was competent; (3) the recording was authentic and correct; (4) no changes, additions, or deletions had been made; (5) the recording was properly preserved; and (6) the testimony listed was voluntarily made without any kind of inducement. Unfortunately, Swann's only objection at the time of trial is that the State failed to prove the chain of custody of the tape. Therefore, Swann's objection is not specific enough to raise the point upon which he now complains. *See* TEX.R.APP.P. 52(a).

■ However, even if the objection had been properly made, we would be forced to overrule the point of error. Article 38.22 provides the procedure for introducing statements made by the accused. TEX. CODE CRIM.PROC.ANN. art. 38.22 (Vernon Supp.1988). Section 3(a) of article 38.-

22 provides that a statement made as a result of custodial interrogation of the accused may be introduced upon the laying of a predicate similar to the one mentioned by Swann. However, section 5 of article 38.22 provides that no predicate is necessary if the information in the statement "has a bearing on the credibility of the accused as a witness." *See Garrett v. State*, 682 S.W.2d 301, 305–06 (Tex.Crim.App.1984); *Mendez v. State*, 716 S.W.2d 712, 715 (Tex. App.—Corpus Christi 1986, pet. ref'd).

As a result, we overrule the remainder of Swann's sole point of error and affirm the judgment of the trial court.