Joseph James FALCETTA,
Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 06–98–00035–CR.

Court of Appeals of Texas,
Texarkana.

Submitted Dec. 9, 1998.

Decided Jan. 6, 1999.

William Brandon Baade, Tyler, for appellant.

Edward J. Marty, District Attorney's Office, Tyler, for appellee.

Before CORNELIUS, C.J., GRANT and ROSS, JJ.

## OPINION

Opinion by Justice GRANT.

Joseph James Falcetta, Jr. appeals his conviction and sentence for aggravated robbery. Falcetta contends he was denied due process and a fair trial under the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the Texas Constitution by (1) the admission of an audio-videotape that was not properly authenticated and (2) the denial of a mistrial after a juror improperly communicated with a witness.[1]

On November 7, 1996, Falcetta boarded a bus traveling from Dallas to the Isle of Capri Casino in Bossier City, Louisiana. While the bus was traveling through Smith County, Texas, a robbery occurred. Falcetta was accused of robbing one of the passengers, Melody Ann Dailey, and was indicted for the offense of aggravated robbery. Trial was to a jury. The jury found him guilty, fined him $5,280.82, and assessed his punishment at forty-four years in the Texas Department of Criminal Justice, Institutional Division.

Falcetta contends he was denied due process and a fair trial under the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the Texas Constitution by admission of a audio-videotape that was not properly authenticated. Falcetta asserts the necessary predicate for the admission of his statement was set forth in *Edwards v. State*.[2] *Edwards* was overruled by the Court of Criminal Appeals in *Angleton v.*

---

1. Falcetta's third point of error contending the trial court erred in admitting photographs was withdrawn. During oral argument, Falcetta's counsel conceded the photographs were never admitted into evidence; therefore, we will not address this point.

2. 551 S.W.2d 731, 733 (Tex.Crim.App.1977).

*State.*[3] The court held that to determine if an audio tape is authenticated, Rule 901 of the Rules of Criminal Evidence is applied instead of *Edwards.*[4] Both *Edwards* and *Angleton* involved the proper predicate necessary for the admission of a sound recording which did not involve an oral statement by the accused made as a result of custodial interrogation.

■ While Falcetta contends his rights to due process and a fair trial were violated, the court in *Edwards* did not address any constitutional (federal or state) requirements for due process or a fair trial when dealing with the admissibility of a tape recording. Due process applies under both the United States and Texas Constitutions when the statement was not freely and voluntarily given.[5] Falcetta does not contend his statement was not freely and voluntarily given, he only challenges the predicate necessary for the admission of the audio-videotape. Furthermore, the standard in *Edwards* has been superseded by the Rules of Evidence.[6]

■ In the present case, Article 38.22 of the Code of Criminal Procedure is controlling.[7] The audio-videotape contained the defendant's oral statement confessing to the robbery, which was elicited by the officers during custodial interrogation. In *Swann v. State,*[8] the defendant complained his statement was not admissible without a proper predicate complying with the seven-pronged test set forth in *Edwards.*[9]

The court held Article 38.22 provided the procedure for the introduction of statements made by an accused.[10] Article 38.22's recording provision is specific to Texas and provides greater protection than the federal constitutional confession provisions.[11] Article 38.22 precludes the use of statements from custodial interrogation without compliance with its procedural safeguards.[12] For these reasons, we will examine whether the audio-videotape met the requirements for admissibility under Article 38.22.

Article 38.22 mandates that an oral statement is not admissible unless (1) an electronic recording, which may include motion picture, videotape, or other visual recording, is made of the statement; (2) prior to the statement but during the recording, the accused is given the warning required in Section 2(a) of the article and the accused knowingly, intelligently, and voluntarily waives any rights set out in the warning; (3) the recording device was capable of making an accurate recording, the operator was competent, and the recording is accurate and has not been altered; (4) all voices on the recording are identified; and (5) not later than the twentieth day before the date of the proceeding, the attorney representing the defendant is provided with a true, complete, and accurate copy of all recordings of the defendant made under this article.[13] These requirements are strictly construed with the ex-

3. 971 S.W.2d 65, 69 (Tex.Crim.App.1998).

4. *Id.*

5. *Zuliani v. State,* 903 S.W.2d 812, 820–21, 825 (Tex.App.-Austin 1995, pet. ref'd).

6. *Angleton v. State,* 971 S.W.2d 65, 69 (Tex. Crim.App.1998).

7. Tex.Code Crim. Proc. Ann. art. 38.22 (Vernon 1979 & Supp.1999).

8. 750 S.W.2d 386, 387–88 (Tex.App.-Fort Worth 1988, no pet.).

9. *Id.* at 387.

10. *Id.*

11. *Davidson v. State,* 977 S.W.2d 708, 710 (Tex.App.-Fort Worth 1998, no pet. h.) (citing *Heitman v. State,* 815 S.W.2d 681, 690 (Tex. Crim.App.1991) (holding that Texas can provide for greater rights than those in the federal constitution), and *Butler v. State,* 493 S.W.2d 190, 190–91 (Tex.Crim.App.1973)).

12. Tex.Code Crim. Proc. Ann. art. 38.22; *LaSalle v. State,* 923 S.W.2d 819, 822 (Tex.App.-Amarillo 1996, pet. ref'd); *Swann v. State,* 750 S.W.2d at 387–88.

13. Tex.Code Crim. Proc. Ann. art. 38.22, § 3(a) (Vernon Supp.1999).

ceptions that only material voices need be identified and the warnings required by Section 2(a) or their fully effective equivalent are admissible.[14]

First, Falcetta argues the State did not show that the operator of the machine was competent because Special Agent Dennis Murphy did not know who turned on the audio-video machine (although Murphy turned it off) and he could not testify from personal knowledge about that person's training. Second, Falcetta argues there was no showing that changes, additions, or deletions had not been made because Murphy did not view the original and did not compare the original with the copy he viewed. Third, Falcetta contends the State did not establish the authenticity and correctness of the tape because Murphy viewed a copy of the original, did not compare the copy with the original, and testified that the copy was a fair and accurate representation from his memory rather than from any written notes he had taken on the day Falcetta gave the statement. Contrary to Falcetta's contentions, the record reflects that Murphy did view the original audio-videotape and the copy in their entirety. Last, Falcetta argues the State did not present any evidence on the manner in which the copy or the original was preserved.

Murphy testified that the audio-videotape shows Falcetta was given the warnings contained in Section 2(a) and that he knowingly, intelligently, and voluntarily waived his rights prior to giving his statement. Falcetta also signed a written waiver acknowledging that he had been given the warnings and waived his rights. This written waiver was admitted into evidence.

Murphy testified that he presumed Jason Waller, a sheriff's deputy, turned on the audio-videotape, but he was not sure because Murphy was in the interrogation room with Special Agent Hersley and Falcetta. Murphy testified that whoever turned on the audio-videotape was competent, because the videotape accurately recorded the interview. Murphy stated that he turned off the machine.

Falcetta made the statement on audio-videotape on November 11, 1996. Murphy testified that he had reviewed the copy of the original videotape that was admitted into evidence. The copy of the original was made by Cole Electronics. Murphy and Hersley both reviewed the copy of the original on November 5, 1997, and placed their initials on the label to indicate that the copy was a fair and accurate representation of the interview. Murphy testified that he had also seen the original tape. Murphy stated that he was in a position to testify that the recording was accurate and that it had not been altered in any way. Murphy said that the recording equipment that was used to make the original videotape was capable of making an accurate recording. Murphy identified the material voices on the tape as belonging to him, Falcetta, and Hersley.

■ The requirements of Article 38.22, § (3)(a) shall be strictly construed. Here, the only requirement that arguably may not have been met is the requirement that the operator was competent. Although Murphy admitted he did not turn on the audio-videotape, he testified that the operator was competent, because the audio-videotape accurately represented Falcetta's statement. When the audio-videotape machine is in one room and the interrogation is taking place in another room, someone other than the one conducting the interview operates the machine. The interrogator need not necessarily know who this person is or the extent of their training. If the final product accurately portrays the interview, then it can be inferred that the operator was competent. Further, it was not necessary for Murphy to take written notes of the interview and compare those notes with the audio-videotape. Murphy had personal knowledge of the interview and need only testify the tape was accurate and had not

14. TEX.CODE CRIM. PROC. ANN. art. 38.22, § 3(e) (Vernon Supp.1999).

been altered.[15] Even if the *Edwards* test still applies, as the Court of Criminal Appeals suggests in *Lucas v. State*,[16] the requirements are basically the same as those required by Article 38.22 and were complied with in this case.[17]

Falcetta argues the State should have produced the original and not a copy. Rules 1001 and 1002 of the Texas Rules of Criminal Evidence [18] define photographs as including videotapes and motion pictures. An original of a photograph includes the negative or any print therefrom.[19] It follows that a copy made from the original videotape is considered an original for purposes of the rule.

Here, the copy was made by a company, not the police department, and both Murphy and Hersley initialed the copy after they reviewed it to designate that it was a fair and accurate representation of the interview. Falcetta's argument that the State was required to introduce the original rather than the copy is without merit.

Jason Waller, a criminalist and property custodian for the sheriff's department, testified that the copy of the audio-videotape had been in his possession and control from the time it was made until it was turned over to the FBI for another matter. The FBI returned the tape to Waller and then he turned it over to the district attorney's office. Falcetta's argument that the State failed to address the manner of the tape's preservation is also without merit. This point of error is overruled.

■ In his second point of error, Falcetta contends he was denied due process and a fair trial under the Fourteenth Amendment to the United States Constitution and Article I, Section 19 of the Texas Constitution because the trial court denied his motion for mistrial after a juror improperly communicated with a witness.

■ Article 36.22 of the Texas Code of Criminal Procedure states that no person shall be permitted to converse with a juror *about the case* on trial except in the presence and by the permission of the court.[20] The rule against jurors conversing with unauthorized persons about a case is so strong that injury to the accused is

---

15. Tex.Code Crim. Proc. Ann. art. 38.22, § 3(a).

16. 791 S.W.2d 35, 57–59 (Tex.Crim.App. 1989).

17. *Edwards* requires reasonably strict adherence to seven requirements: (1) a showing that the recording device was capable of taking testimony, (2) a showing that the operator of the device was competent, (3) establishment of the authenticity and correctness of the recording, (4) a showing that changes, additions, or deletions had not been made, (5) a showing of the manner of the preservation of the recording, (6) identification of the speakers, and (7) a showing that the testimony elicited was voluntarily made without any kind of inducement.
    Murphy testified that (1) the recording device was capable of making an accurate recording, (2) the operator of the device was competent, because the recording was a fair and accurate representation of Falcetta's statement, (3) he had compared the original with the copy and the copy was an accurate representation of Falcetta's statement, (4) the audio-videotape had not been altered in any way, (5) the voices belonged to him, Falcetta, and Hersley, and (6) Falcetta was given the warnings required by Section 2(a) and he knowingly and voluntarily waived his rights. Lastly, Waller testified the audio-videotape had been in his possession from the time it was made until the time of trial, except for a temporary loan to the FBI, which later returned the audio-videotape. The audio-videotape was properly authenticated under *Edwards*.

18. At the time Falcetta went to trial in 1997, the Texas Rules of Criminal Evidence applied. On March 1, 1998, the Texas Rules of Criminal Evidence and the Texas Rules of Civil Evidence were replaced by the Texas Rules of Evidence, which now apply to all cases going to trial after March 1, 1998.

19. Tex.R.Crim. Evid. 1001, 1002 (now Tex.R. Evid. 1001, 1002). Rule 1002 states "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required except otherwise provided in these rules or by law." Tex. R.Crim. Evid. 1002 (now Tex.R. Evid. 1002).

20. Tex.Code Crim. Proc. Ann. art. 36.22 (Vernon 1981).

**300** ▪

presumed.[21] The presumption is rebuttable, however. If it is shown that the case was not discussed or that nothing prejudicial to the accused was said, then appellant has not been injured and the verdict will be upheld.[22] The defendant bears the burden of establishing prejudice [23] as well as establishing that the discussion involved matters concerning the specific case at trial.[24]

The record reflects that defense counsel informed the court that she and her co-counsel had seen a witness, Melody Dailey, also a victim in the case, talking with a juror during a break. The court conducted a hearing on the matter, calling both the juror and the witness, outside the presence and hearing of each other, to determine the nature of their conversation. Both the juror and the witness testified they had discussed only the weather and had not discussed the facts of the case. Falcetta moved for a mistrial, but the trial court denied the motion. The court excused the juror, and an alternate juror took the excused juror's place.

Falcetta argues the trial court did not inquire sufficiently to determine if Falcetta was harmed by the juror's contact with the witness. Specifically, the court did not ask the other jurors whether the excused juror had communicated with them after the conversation. Here, the excused juror had not become infected, because both the excused juror and the witness testified they had not discussed the case.

No evidence showed that any information from the witness was communicated to the other jurors by the excused juror, and there was no information about the case communicated to the excused juror. The trial court did not abuse its discretion in overruling Falcetta's motion for a mistrial because the presumption was rebutted and Falcetta failed to show that he was prejudiced by the conversation.[25] This point of error is overruled.

The judgment is affirmed.

---

**21.** *Alba v. State*, 905 S.W.2d 581, 587 (Tex. Crim.App.1995); *Matthews v. State*, 960 S.W.2d 750, 756 (Tex.App.-Tyler 1997, no pet.) (citing *McMahon v. State*, 582 S.W.2d 786, 793 (Tex.Crim.App.1978)).

**22.** *Id.*

**23.** *Alba*, 905 S.W.2d at 587; *Matthews*, 960 S.W.2d at 756 (citing *Chambliss v. State*, 647 S.W.2d 257, 266 (Tex.Crim.App.1983)).

**24.** *Romo v. State*, 631 S.W.2d 504, 506 (Tex. Crim.App. [Panel Op.] 1982), *overr. on other grounds, Cockrell v. State*, 933 S.W.2d 73 (Tex. Crim.App.1996).

**25.** *Matthews*, 960 S.W.2d at 756–57.