

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| RAMOND GOMEZ A/K/A | | No. 08-12-00044-CR |
| RAMON GOMEZ, | § | |
| | | Appeal from |
| Appellant, | § | |
| | | 355th District Court |
| v. | § | |
| | | of Hood County, Texas |
| THE STATE OF TEXAS, | § | |
| | | (TC # CR12001) |
| Appellee. | § | |

**O P I N I O N**

Raymond Gomez, a/k/a Ramon Gomez, appeals from his convictions for one count of aggravated sexual assault of a child and two counts of indecency with a child by contact. For the reasons that follow, we modify the judgment for each count to reflect that punishment was assessed by the trial court, and affirm the judgments as so modified.

**FACTUAL SUMMARY**

On September 23, 2011, Gay Johnson, an investigator in the criminal investigations division of the Hood County Sheriff's office, received an offense report from Deputy Katie Barton of an aggravated sexual assault of a child. After he received the report, Johnson called the Child Advocacy Center to set up a forensic interview with the victim. Johnson testified that he witnessed the forensic interview via a video camera. After the interview, Johnson felt that the victim needed to be referred to the CARE team at Cook's Children's Hospital and he scheduled

an appointment. Johnson received a copy of the report from Cook's which he described as consistent with what he observed during the forensic interview.

At that point, Robert Young, an investigator with the District Attorney's office, became involved in the case. According to Johnson, Young attempted to follow up the allegations by making a "controlled phone call." As Johnson explained, a controlled phone call is "where we make a phone call to the suspect, and either the victim or the victim's parent may attempt to talk to that subject on the phone and see if we can get a confession from the phone call." The attempt to get Appellant on the phone was unsuccessful. The officers then asked Appellant's sister to show them where he lived, which she did. At the time Johnson and Young initially went to Appellant's home they did not have an arrest warrant, but they were in the process of investigating the allegations of child abuse.

The two officers arrived at the house and knocked on the door. Appellant's brother, Frank Gomez, came to the door. Frank told the officers that Appellant was in his bedroom and then escorted them through the house and to the room. The officers found Appellant in the bedroom. They informed him that he was not under arrest and that he could ask them to leave at any time. They talked to Appellant for approximately an hour and then, right before they left, Young asked Appellant if he would come to the District Attorney's office so they could finish the conversation there. Johnson and Young both testified that Appellant agreed to do so.

A few hours later, Appellant's brother, Frank, drove him to the Hood County District Attorney's office for another interview. Before the interview, Investigator Young read Appellant his *Miranda*[1] warnings. A signed copy acknowledging Appellant was in fact read his *Miranda* rights was also admitted into evidence at trial. During the interview, Appellant admitted to

---

[1] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

sexually abusing AA12 and provided a detailed account of his inappropriate interactions with her. The interview was recorded.

Shortly before trial, Appellant filed a written motion to suppress his first statement. He did not move to suppress the second statement. The trial court conducted a hearing outside of the jury's presence on the motion. The State agreed that it would not introduce the statement made at the residence during its case-in-chief and it would approach the bench if the statement became relevant for some purpose during trial. Appellant's attorney objected to admission of the second statement on the ground that it did not identify all of the voices on the recording. The prosecutor assured the court that the voices on the recording were identifiable and he would lay the predicate prior to offering the statement into evidence. The court instructed the prosecutor to lay the predicate at the appropriate time and advised defense counsel that she could object anytime and the court would rule. Appellant did not make any other objections during the hearing.

During its case-in-chief, the prosecutor established the predicate for admission of the second statement, including identification of the voices on the recording, and offered the exhibit into evidence. Appellant's counsel objected to the audio recording because all of the voices were not identified on the recording itself. The trial court overruled the objection and the recording was played for the jury. AA12 also testified in detail at trial with respect to the sexual abuse.

At the close of evidence and outside of the jury's presence, the following exchange occurred between counsel and the trial judge:

THE COURT: Anything for the charge?

[PROSECUTOR FOR THE STATE]: I want an instruction that 'on or about' allows the State to prove the offense occurred anytime before the presentment of the indictment and within the statute of limitations.

[COUNSEL FOR APPELLANT]: The only other thing that I would like is the paragraph regarding the fact that [the voices] weren't -- I know that they identified them here, but in the statement, they weren't identified in the audio itself, that I'd like an instruction that they find that in the statement itself, they weren't identified.

[PROSECUTOR FOR THE STATE]: I don't think that's the law, Judge, and also he wasn't in custody, either.

[COUNSEL FOR APPELLANT]: That's true.

[PROSECUTOR FOR THE STATE]: So I don't think --

THE COURT: I don't know what you're talking about. I mean, I know what you're talking about, but I've never seen an instruction on it or given an instruction on it, not that I recall.

[COUNSEL FOR APPELLANT]: But other than that, no.

[PROSECUTOR FOR THE STATE]: I'm going to look through my archive and find that one instruction, because I think that's important.

THE COURT: Well, okay. Then you get to do this. You need to have that to Penny first thing in the morning.

[PROSECUTOR FOR THE STATE]: Yes, yes.

THE COURT: Because I've got a charge prepared. 8:15, 8:00 -- it doesn't have to be 8:00 o'clock, but you need to get it to her obviously long before 9:00, because they'll be back at 9:00 o'clock.

[PROSECUTOR FOR THE STATE]: Thank you, Your Honor. May we be excused?

THE COURT: Yes.

The following morning, before the jury was brought in, the trial court asked the parties for their objections to the charge: THE COURT: The Court has prepared its proposed charge and will hear any objections or special requested in instructions. Does the State have any?

[PROSECUTOR FOR THE STATE]: No, Your Honor.

THE COURT: Does the defense have any?

- 4 -

[COUNSEL FOR APPELLANT]: None, Your Honor.

The charge does not include the instruction requested by Appellant. The jury convicted Appellant of one count of aggravated sexual assault and two counts of indecency with a child. Appellant pled true to his prior conviction for indecency with a child and the court assessed Appellant's punishment at life imprisonment on each count.

## THE RECORDED STATEMENT

Appellant presents the following as a single issue on appeal:

> The trial court erred when it admitted [Appellant's] oral statement over objection from Appellant, without a jury instruction as to whether the requirements of Article 38.22 had been met, in violation of 38.22, *Miranda*, and the Fifth Amendment.

In the argument section of his brief, Appellant argues that (1) the statement is inadmissible because all of the voices on the recorded statement were not identified on the statement itself; (2) the trial court failed to conduct a hearing on voluntariness as required by Article 38.22 § 6; and (3) the trial court did not include in the charge a general Article 38.22, § 7 warnings instruction (involving warnings given under Article 38.22 § 2 and § 3).

An issue or point of error is multifarious if it embraces more than one specific ground of error. *Mays v. State*, 318 S.W.3d 368, 385 (Tex.Crim.App. 2010). By combining independent grounds together in a single issue, an appellant risks rejection of his arguments. *See Wood v. State*, 18 S.W.3d 642, 649 n.6 (Tex.Crim.App. 2000)(refusing to address multifarious grounds). We will address Appellant's issues to the extent they are preserved and adequately briefed.

### *Identification of the Material Voices*

In his first sub-issue, Appellant argues that the trial court erred by admitting the second statement because all of the voices were not identified on the recording itself as required by

Article 38.22.  An appellate court reviews a trial court's decision to admit evidence for an abuse of discretion.  *See Ramos v. State*, 245 S.W.3d 410, 417-18 (Tex.Crim.App. 2008).  We will not overturn the trial court's decision so long as it is correct under any theory of law applicable to the case and the decision is within the zone of reasonable disagreement.  *See Ramos*, 245 S.W.3d at 418.

Article 38.22 sets forth rules governing the admissibility of an accused's written and oral statements that are the product of custodial interrogations.  *Oursbourn v. State*, 259 S.W.3d 159, 171 (Tex.Crim.App. 2008); *see* TEX.CODE CRIM.PROC.ANN. art. 38.22 (West 2005).  Article 38.22 provides that an oral statement of an accused made as a result of custodial interrogation is inadmissible unless:  (1) the statement is recorded electronically; (2) during the recording and before the accused's statement, the accused is given the required warnings under Article 15.17; (3) the recording device is capable of making an accurate record, the operator was competent, and the recording is accurate; (4) all material voices on the recording are identified; and (5) the accused's attorney is provided with an accurate copy of the recording.  TEX.CODE CRIM.PROC. ANN. art. 38.22, § 3(a), (e).

Appellant complains that the trial court erred in admitting the audio recording because it did not comply with the requirement that all material voices on an electronic recording be identified.  *See* TEX.CODE CRIM.PROC.ANN. 38.22, § 3(a)(4), (e)(1).  Appellant recognizes that Investigator Young testified at trial as to the voices on the tape, but he contends that the voices were not identified on the audio recording itself.  Appellant preserved this complaint because he made a timely objection at trial and obtained an adverse ruling.  *See* TEX.R.APP.P. 33.1.  He did not, however, establish that Article 38.22 applied to this statement.

The requirements of Article 38.22 § 2 and § 3 apply only to statements made "as a result of *custodial interrogation*." [Emphasis added]. *See* TEX.CODE CRIM.PROC.ANN. art. 38.22. Appellant bore the initial burden to prove he was in custody when he gave his oral statement to Investigator Young. *See Herrera v. State*, 241 S.W.3d 520, 526 (Tex.Crim.App. 2007). Appellant's counsel acknowledged during a discussion with the prosecution and the trial court that Appellant was not in custody at the time he gave the recorded statement. For this reason alone, Appellant's first argument is without merit. However, even if Appellant had been in custody, the State established that all material voices on the recording were identified.

The Court of Criminal Appeals addressed the admissibility of a video-recorded statement in *Lucas v. State*, 791 S.W.2d 35 (Tex.Crim.App. 1989) where the defendant argued that the State had failed to identify all of the voices on a video-recorded statement. Lucas was tried and convicted of capital murder for the murder-sexual assault of a woman whose nude body was discovered near Interstate 35 north of Georgetown. *Id.* at 40. After being arrested in Montague County on a weapons charge, Lucas confessed to multiple murders. *Id.* at 41. The Williamson County Sheriff interviewed Lucas and he admitted picking up a hitchhiker in Oklahoma and killing her after sexually assaulting her. *Id.* He dumped the body in a culvert off of I-35. *Id.* The Sheriff's Office subsequently made two video-recorded statements of Lucas, the first at the crime scene where the body was found and the second at the Sheriff's Office. *Id.* at 41-42. In the crime scene video, Lucas identified a picture of the victim and provided details about the capital murder. *Id.* at 42.

Lucas argued on appeal that the crime scene video was erroneously admitted because the State failed to satisfy the predicate requirement for admission of the video under Article 38.22 § 3(a)(4) that all voices heard on the tape recording be identified. *Id.* at 57. He specifically

complained that the voices of other individuals outside the range of the camera were not identified prior to admission of the tape. *Id.* The Court of Criminal Appeals emphasized that the State presented testimony prior to admission of the video recording identifying the parties who directly participated in the crime scene video recording. *Id.* The State also established that there were other individuals near the scene who did not participate in the taking the statement from Lucas. *Id.* The Court of Criminal Appeals distinguished between the speakers who actively contributed to the video recording and those whose voices are merely in the background and whose comments did not have any material relevance to the interview. *Id.* Because all of the active participants in the crime scene interview were identified at trial, the Court concluded it could not say that any individual's voice remained "unidentified" for purposes of Article 38.22, and it held that the predicate for admission of the statement was satisfied. *Id.* at 57-58.

Even though *Lucas* did not involve the precise argument presented by the instant case, the Court of Criminal Appeals was certainly addressing whether the State had satisfied Article 38.22 § 3(a)(4)'s requirement that all material voices on the recording be identified. The Court relied on evidence presented at trial when determining whether the State had satisfied this requirement. We find *Lucas* persuasive.

A few unpublished opinions have addressed the issue of whether Article 38.22(a)(4) requires identification to be made on the tape recording itself, or whether identification of voices by witnesses at trial is sufficient. *See Stewart v. State*, No. 04-08-00274-CR, 2009 WL 2183397, at \*5 (Tex.App.--San Antonio July 22, 2009, pet. ref'd)(mem. op.)(not designated for publication); *Petry v. State*, No. 01-86-00517-CR, 1987 WL 14550, at \*2 (Tex.App.--Houston [1st Dist.] July 23, 1987, no pet.)(not designated for publication). In each of these cases, the court of appeals held that there is no requirement that the identification be made on the recording

itself and that identification of the material voices by a witness at trial is sufficient to satisfy the identification requirement.

Likewise, in *Parker v. State*, No. 02-12-00348-CR, 2013 WL 2248254, at *2 (Tex.App.--Fort Worth May 23, 2013, no pet. h.)(mem. op.)(not designated for publication), the appellant argued that his recorded statements were inadmissible because "all material voices on the recording were not identified." *Parker*, 2013 WL 2248254, at *2. While the court of appeals in *Parker* did not directly address the argument because the appellant had not properly preserved the complaint for appeal, the court cited to *Lucas v. State*, 791 S.W.2d 35, 57-58 (Tex.Crim.App. 1989) and stated that:

> Even if we were to address the merits of the issue, Parker would not be entitled to relief. [A witness] testified that he had watched the video recording of Parker's post-warning statements and that the video fairly and accurately depicted what occurred. Further, [the same witness] was able to identify the voices on the recording and recounted what was said. This is sufficient to meet the admissibility requirement of article 38.22, section 3(a)(4).

*Parker*, 2013 WL 2248254, at *2, *citing* TEX.R.EVID. 901(a), (b)(5); *Lucas*, 791 S.W.2d at 57-58 *and Falcetta v. State*, 991 S.W.2d 295, 298-99 (Tex.App.--Texarkana 1999, pet. ref'd).

Based on the foregoing authority, we conclude that Investigator Young's trial testimony identifying all material voices on the recording was sufficient to satisfy the requirement of Article 38.22 § 3(a)(4). Accordingly, the trial court did not abuse its discretion by overruling Appellant's objection and admitting the evidence. Appellant's first sub-issue is overruled.

### *Failure to Conduct Hearing to Determine Voluntariness*

In his second sub-issue, Appellant complains that the trial court erred by failing to conduct a hearing outside the presence of the jury to determine the voluntariness of the second oral statement as required by Article 38.22 § 6. Article 38.22, section 6 provides in pertinent part as follows:

> In all cases where a question is raised as to the voluntariness of a statement of an accused, the court must make an independent finding in the absence of the jury as to whether the statement was made under voluntary conditions. If the statement has been found to have been voluntarily made and held admissible as a matter of law and fact by the court in a hearing in the absence of the jury, the court must enter an order stating its conclusion as to whether or not the statement was voluntarily made, along with the specific finding of facts upon which the conclusion was based, which order shall be filed among the papers of the cause.

TEX.CODE CRIM.PROC.ANN. art. 38.22, § 6 (West 2005). Section 6 applies to an accused's custodial and non-custodial statements. *Oursbourn,* 259 S.W.3d at 171; *State v. Terrazas*, 4 S.W.3d 720, 727 (Tex.Crim.App. 1999).

In his pretrial motion to suppress the first statement, Appellant alleged that the officers' failure to *Mirandize* him raised an issue regarding the voluntariness of the statement. During the hearing, the State informed the court that it would not introduce the first statement during its case-in-chief. The prosecutor informed the court that Appellant was *Mirandized* prior to making the second statement. Appellant made only one objection to admission of the second statement, that is, the voices of the speakers were not identified on the recording itself.

To preserve an issue for review on appeal, the appellant must show that he made a timely and specific objection at trial. *See* TEX.R.APP.P. 33.1. Appellant's motion to suppress did not address any aspect of his second statement, including voluntariness or failure to warn. The trial court conducted a hearing but Appellant restricted his complaint about the second statement to identification of the voices on the recording. He did not raise any issue regarding voluntariness of the statement. When the State offered the second statement into evidence, Appellant referred only to the objection stated during the earlier hearing. We conclude that Appellant failed to preserve the argument presented in his second sub-issue. *See Lucio v. State*, 351 S.W.3d 878, 893 (Tex.Crim.App. 2011)(holding that appellant's objection that not all voices on the recording

could be identified failed to preserve any voluntariness, lack-of-warning, or illegal-arrest claims relating to the admissibility of a recorded statement). Appellant's second sub-issue is overruled.

### *Jury Instruction*

Finally, we turn to Appellant's contention that the trial court erred by failing to provide a jury instruction as to whether the requirements of Article 38.22 had been met. We review charge error using the procedure set out in *Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App. 1985). The first step is to determine there was error in the charge. *Sakil v. State*, 287 S.W.3d 23, 25 (Tex.Crim.App. 2009); *Barrios v. State*, 283 S.W.3d 348, 350 (Tex.Crim.App. 2009). If error exists, we proceed to the second step which is to determine whether the error was harmful. *Barrios*, 283 S.W.3d at 350. If the appellant objected to the charge, reversal is required if there is some harm. *Barrios*, 283 S.W.3d at 350. If the error was not objected to, it must be "fundamental" and requires reversal occurs only if it was so egregious and created such harm that the defendant "has not had a fair and impartial trial." *Barrios*, 283 S.W.3d at 350, *quoting Almanza*, 686 S.W.2d at 171.

The Court of Criminal Appeals explained in *Oursbourn* that there are three types of instructions that relate to the taking of confessions: (1) a "general" Article 38.22, § 6 voluntariness instruction; (2) a "general" Article 38.22, § 7 warnings instruction (involving warnings given under § 2 and § 3); and (3) a "specific" Article 38.23(a) exclusionary-rule instruction. *Oursbourn*, 259 S.W.3d at 173. The Section 6 "general" instruction asks the jury whether it believes that the defendant's confession was voluntary, and instructs the jury to not consider the confession if the jury finds it was not voluntary. *Id.* The "general" Section 7 instruction sets out the requirements of Article 38.22, § 2 or § 3 and asks the jury to decide whether all of those requirements were met. *Id.* To be entitled to one of these instructions, the

evidence must raise a "voluntariness" issue, and the defendant should request a jury instruction that relates to his theory of involuntariness. *Id.* at 174. If the defendant never presents a proposed jury instruction or fails to object to the lack of one, any potential error in the charge is reviewed only for "egregious harm" under *Almanza v. State*, 686 S.W.2d 157 (Tex.Crim.App. 1984). *Oursbourn*, 259 S.W.3d at 174.

At the close of evidence, Appellant's counsel requested that the court include in the charge an instruction related to her argument that the voices were not identified on the audio recording itself. Thus, it appears Appellant was requesting a Section 7 "general" instruction, but there are no fact issues to be determined by the jury related to the identification of the voices on the audio recording. The question whether the material voices must be identified on the recording itself is a question of law which we have decided against Appellant. Consequently, we conclude that the trial court did not err by failing to include such an instruction in the charge. Appellant's third sub-issue is overruled.

We have concluded that the judgments entered in this case need to be modified. The trial court entered a separate judgment for Counts 1, 2, and 3. Each of these judgments recites that punishment was assessed by the jury but the reporter's record and the court's docket sheet reflect that the trial court assessment punishment. Accordingly, we modify the judgments for Counts 1, 2, and 3 to reflect that the court assessed punishment. Having overruled each sub-issue presented in Issue One, we affirm the judgments as so modified.

January 15, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)