**Randy Clarence MATTHEWS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 12–94–00338–CR.

Court of Appeals of Texas, Tyler.

July 31, 1997.

Kenneth L. Hawkins, Hawkins, for appellant.

Edward J. Marty, Tyler, for appellee.

Before RAMEY, C.J., and HOLCOMB and HADDEN, JJ.

HOLCOMB, Justice.

Randy Clarence Matthews ("Appellant") appeals his conviction for involuntary manslaughter, for which the jury assessed the maximum penalty of twenty (20) years confinement in the Texas Department of Crimi-

nal Justice, Institutional Division, with an affirmative deadly weapon finding and a fine of $10,000. Appellant assigns eleven points of error. We will **affirm** the trial court's judgment.

Appellant was driving his pickup truck north on Highway 69 into Tyler, then turned west onto Loop 323. Instead of navigating his vehicle into the westbound lane, however, Appellant drove into the eastbound lane. Another driver saw Appellant's truck on the wrong side of the road and attempted to get his attention by honking and flashing his lights. He testified that Appellant was weaving in and out of oncoming traffic, meeting but not colliding with at least seven other vehicles. Robert Wright ("victim"), in the eighth vehicle, was driving his car in the eastbound lane closest to the median. Appellant came over the crest of a hill in that same lane, and collided with the victim. There were two passengers in the victim's vehicle, Amanda Cromer ("Amanda"), victim's 14–year–old girlfriend, and Miranda Cromer ("Miranda"), Amanda's nine-year-old sister. The victim died at the scene, and Amanda died a couple of days later. EMTs took Appellant to the hospital, where a nurse drew blood for a blood alcohol test. Appellant's alcohol level was .30, three times the legal limit.

In his first two points of error, Appellant complains that the trial court erred when it struck two potential jurors for cause. The record shows that one male and one female veniremember failed to give full and complete answers to questions concerning prior criminal history. After questioning the veniremembers, and upon motion by the State, the trial court struck them for being "unfit as ... juror[s] for failure to give full and complete answers which shows a bias or a prejudice, though unspoken, upon the law upon which the State and the Defense are entitled to rely, that is, jurors to follow their oath as jurors."

■ Appellant argues that the challenge for cause was not based on a statutory disqualification under TEX.CODE CRIM. PROC. ANN. art. 35.19 (Vernon Supp.1993). The list of enumerated reasons in the statute are not exclusive, however, and a prospective juror may be successfully challenged if the facts show that the juror is "incapable or unfit to serve on the jury." *Allridge v. State,* 850 S.W.2d 471, 484 (Tex.Cr.App.1991). A juror's failure to truthfully answer questions put to him by the court may support a challenge for cause. *See Gunter v. State,* 858 S.W.2d 430, 443 (Tex.Cr.App.1993), *cert. denied,* 510 U.S. 921, 114 S.Ct. 318, 126 L.Ed.2d 265. The trial court may determine that a prospective juror's failure to truthfully answer a question reflects a lack of credibility which might prevent him from obeying his oath and following his instructions. *Id.* A reviewing court will not disturb the trial court's decision to strike for cause absent an abuse of discretion. *Allridge,* 850 S.W.2d at 486. We hold that the trial court did not abuse its discretion in striking the potential jurors for cause based upon their failure to truthfully answer questions put to them by the court. Points of error one and two are overruled.

■ In points of error three and four, Appellant complains that he was denied effective assistance of counsel because his attorney failed to file a motion *in limine* or object at trial to testimony of an extraneous offense that was in violation of TEX. R.CRIM. EVID. 404(b). The extraneous offense of which he complains is the death of Amanda, which occurred approximately two days after, but as a consequence of, the collision. The State argues that the admission of evidence as to Amanda's death was not error, and therefore counsel was not ineffective when he failed to object to it. It is not ineffective assistance when an attorney does not preserve those "errors" which are not reversible error. *Johnson v. State,* 691 S.W.2d 619, 626 (Tex.Cr.App.1984); *Doyle v. State,* 875 S.W.2d 21, 23 (Tex.App.—Tyler 1994, no pet.). Our first inquiry, then, must be whether or not admission of evidence of Amanda's death over Appellant's objection would have been error. The State asserts that the extraneous offense was admissible as "same transaction contextual evidence," citing *Camacho v. State,* 864 S.W.2d 524 (Tex. Cr.App.1993). We do not agree.

■ Rule 404(b) prohibits the admission of evidence of extraneous offenses committed by the defendant for the purpose of proving the character of the defendant in order to show that he acted in conformity with that character on the occasion in question. If the opponent of extraneous offense evidence objects on the grounds that the evidence is not relevant, violates Rule 404(b), or constitutes an extraneous offense, the proponent must satisfy the trial court that the extraneous offense evidence has relevance apart from its character conformity value. *Montgomery v. State,* 810 S.W.2d 372, 387 (Tex.Cr.App.1990). If the trial court determines the evidence has no relevance apart from supporting the conclusion that the defendant acted in conformity with his character, it is absolutely inadmissible. *Id.* On the other hand, the rule provides exceptions to this principle, *e.g.* when the evidence tends to prove motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. This list is not exclusive, however, and extraneous offenses may be admissible for "other purposes." Rule 404(b). For example, another exception under the rule is "same transaction contextual evidence." *Rogers v. State,* 853 S.W.2d 29, 33 (Tex.Cr.App.1993). This type of evidence is deemed admissible where

> ... several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others. The reason for its admissibility is simply because in narrating the one it is impracticable to avoid describing the other, and not because the other has any evidential purpose. Necessity, then, seems to be one of the reasons behind admitting evidence of the accused's acts, words and conduct at the time of the commission of the offense.

*Id.* The proponent of the evidence must show that divulging the extraneous offense is "necessary" because the facts and circumstances of the indicted offense make little or no sense without it. *Id.* In other words, if the State can present its case without offering evidence of the extraneous offense, and without con-

fusing the jury or prejudicing its case, it must do so.

■ In *Camacho,* the Court of Criminal Appeals held that evidence that appellant kidnapped two persons after murdering another person in the same household was "same transaction contextual evidence." *Camacho,* 864 S.W.2d at 532. The Court explained that it was admissible because:

> Such evidence imparts to the trier of fact information *essential* to understanding the context and circumstances of events which, although legally separate offenses, are blended or interwoven ... As such, it is admissible, not for the purpose of showing character conformity, but to illuminate the nature of the crime alleged. (emphasis added)

*Id.* In the instant case, Amanda's death was not necessary or essential for the jury to understand the nature of Appellant's crime. In reviewing the record, it is clear that the State could have presented its case without alluding to Amanda in any way, much less referring to her death. The only "purpose" for introducing evidence of this extraneous offense was to inflame the jury. We hold that evidence of Amanda's death was not admissible as same transaction contextual evidence. If trial counsel had filed a motion *in limine* and then objected to admission of that evidence at trial, it would have been error for the trial court to admit it. Consequently, we must continue with our analysis of Appellant's ineffective assistance complaint.

A defendant has a right to effective assistance of counsel at trial. U.S. CONST. amend. VI; TEX. CONST. art. I, § 10; *Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932). The Supreme Court of the United States established the standard of appellate review for the court to apply to claims of ineffective assistance of counsel during the guilt/innocence stage of trial in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The *Strickland* standard of review applies to claims arising under the TEX. CONST. art. I, § 10. *Hernandez v. State,* 726 S.W.2d 53, 55 (Tex.Cr.App. 1986).

In asserting a claim of ineffectiveness, Appellant must show that 1) counsel's performance was so deficient that it fell below an objective standard of reasonableness; and 2) there is a reasonable probability that, but for the deficient performance, the result of the proceeding would have been different. *Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. To meet this standard, Appellant must identify specific acts or omissions of counsel allegedly not the result of reasonable professional judgment. *Id.* When he makes an ineffective assistance claim, it is Appellant's burden to establish by a preponderance of the evidence that counsel was ineffective. *Molinar v. State,* 910 S.W.2d 572, 577 (Tex.App.—El Paso 1995, no pet.). The right to effective counsel is not the right to perfect or error-free counsel. *Hernandez,* 726 S.W.2d at 56. Ineffectiveness of counsel is not to be judged on the basis of isolated instances of error, but on the entire record and the totality of circumstances. *Bridge v. State,* 726 S.W.2d 558, 571 (Tex.Cr.App.1986); *Wilkerson v. State,* 726 S.W.2d 542, 548 (Tex. Cr.App.1986); *Hawkins v. State,* 660 S.W.2d 65, 75 (Tex.Cr.App.1983). A reviewing court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. In other words, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065; *Stafford v. State,* 813 S.W.2d 503, 506 (Tex.Cr.App.1991).

Appellant's counsel was saddled with an almost untenable defense. There were two credible eyewitnesses and scientific evidence of Appellant's extreme intoxication. Appellant's trial attorney attempted to minimize the effect of his client's actions in the collective mind of the jury by maximizing the effect of the victim's actions. Defense counsel's argument was that the victim would not have died if he had been an attentive, defensive driver, and if he had been wearing his seatbelt. The trial court denied Appellant's proffer of seatbelt statistical evidence as to the issue of causation. Counsel could very well have determined that his only recourse was to offer his own statistical evidence: the victim and Amanda, who were not wearing seatbelts, both died; Miranda and Appellant, who *were* wearing seatbelts, did *not* die. *Ergo,* if the victim had been wearing his seatbelt, he would not have died. This defense necessitated the jury's knowledge of Amanda's death. Also, in defense counsel's opening statement, he alluded to evidence that the victim was not paying attention to his driving when the collision occurred. He stated that the defense had subpoenaed Miranda to testify as to this issue. From counsel's opening remarks, we can infer that Appellant's defense would have been that because of fourteen-year-old Amanda's presence in the car with her much-older boyfriend, the victim's attention had strayed. This testimony would necessitate discussion of Amanda, which would necessarily lead to disclosure of her ultimate fate. There's nothing in the record to indicate why Miranda did not testify. Defense counsel, in his opening statement, certainly indicated that he intended calling her to the stand. We can only speculate that Miranda became unavailable or her story changed after trial began. Whatever the case, in spite of his best efforts, trial counsel's strategy of focusing the blame on the victim did not work. But the question before us is whether the trial attorney's decision not to object to the admission of the evidence amounted to ineffective assistance of counsel. We hold that it did not. The decision not to object can be a plausible trial strategy, not only for the above-described reasons, but as part of an attempt to create the appearance of being open and completely honest with regard to all questions. Indulging the strong presumption that trial counsel was following a sound trial strategy, we hold that although the evidence of Amanda's death was objectionable, on the facts of this case it was plausible for trial counsel to refrain from filing a motion *in limine* or objecting at trial. As an aside, we note that defense attorney consistently objected to other inadmissible evidence throughout the trial. Points of error three and four are overruled.

Appellant alleges in his fifth point of error that he was ineffectively represented when his trial attorney failed to request that the court place a limiting instruction in the

charge concerning the extraneous offense. Again, as with the two previous points, we find that the defense attorney's decision not to do so could have been plausible trial strategy. It is possible that he did not ask for the instruction because Amanda's death was relevant to his defensive position that other factors, besides Appellant's intoxication, caused victim's death. We note that Appellant's trial attorney did request and receive an instruction on concurrent causation. There's also the very strong possibility that trial counsel reasonably believed that since the evidence of the extraneous offense had come in without objection, his request for a limiting instruction would have been overruled. *See Molinar,* 910 S.W.2d at 579 (holding that counsel could have reasonably determined that the trial court would not sustain a Rule 403 objection; therefore, counsel's failure to object to this evidence was not deficient performance). We overrule point of error five.

■ In his sixth point of error, Appellant argues that the trial court erred when it denied his proffer of seatbelt fatality statistics. He asserts that the evidence was relevant to his defense that Appellant's act would not have killed the victim but for the victim's failure to wear a seatbelt. In considering whether or not the court committed error, it is important to note initially that the trial judge's decision to admit or exclude evidence should be given due deference. *Cantrell v. State,* 731 S.W.2d 84, 90 (Tex.Cr.App.1987). Absent a clear abuse of discretion, that determination should not be disturbed on appeal. *Templin v. State,* 711 S.W.2d 30, 33 (Tex.Cr.App.1986). To prevail on this point, Appellant must also show, in addition to abuse of discretion, that the error was reversible error. *Texas Dept. of Human Services v. Green,* 855 S.W.2d 136, 148 (Tex. App.—Austin 1993, writ denied).

■ The State argues, and we agree, that the seatbelt statistics were irrelevant to the charged offense. The photographs offered at trial show very clearly that the victim's skull was crushed by his car door. There's very little doubt that in this particular case, a seatbelt would not have protected the victim from his injuries. The trial court did not abuse its discretion in excluding the statisti-

cal evidence. Additionally, Appellant failed to cite any authority or state how the exclusion of the evidence was reversible error. We overrule point of error six.

Appellant complains in point seven that the trial court erred by denying his motion for mistrial after a prosecution witness spoke with a juror. The record reflects that the bailiff informed the court that he had seen a witness for the prosecution, talking to a juror on the courthouse steps during a break. The court conducted a hearing on the matter, and found that the two men had spoken very briefly about the weather and about the juror's job. Appellant moved for mistrial, or in the alternative to strike the witness' testimony, but the court denied both motions. The court based its denial upon the conclusion that, although the interaction between witness and juror was inappropriate, the conversation was casual, brief, unrelated to the trial, and did not make an impact on the juror or the witness.

■ "No person shall be permitted to converse with a juror about the case on trial except in the presence and by the permission of the court." Tex.Code Crim. Proc. Ann. art. 36.22 (Vernon Supp.1993). The rule against jurors conversing with unauthorized persons about a case is so strong that injury to the accused is presumed. *McMahon v. State,* 582 S.W.2d 786, 793 (Tex.Cr.App.1978) (cite omitted). The presumption is rebuttable, however. If it is shown that the case was not discussed or that nothing prejudicial to the accused was said, a new trial is not required. *Id.* The defendant bears the burden of establishing prejudice. *Chambliss v. State,* 647 S.W.2d 257, 266 (Tex.Cr.App.1983).

■ Appellant argues that the witness and juror developed a rapport, and that the rapport properly supported a mistrial. He fails, however, to provide any proof that rapport developed between the two men, or cite any authority for his proposition that the court abused its discretion in failing to grant his mistrial on that basis. In light of the undisputed testimony that Appellant's case was not discussed during the unauthorized conversation between the witness and the juror, as well as Appellant's failure to show

that he was prejudiced in any way by the men's small talk, we hold that the trial court did not abuse its discretion by overruling Appellant's motion for mistrial. Point of error seven is overruled.

In his eighth point of error, Appellant complains that the trial court erred by denying his motion for mistrial after the victim's brother disrupted trial proceedings. The record reflects that during cross-examination of a prosecution witness, the defense attorney attempted to garner testimony about the victim's inattentiveness. He specifically asked the witness if "the stereo switch [of the victim's car] was still in the on position and how high the volume was." At this point, victim's brother clearly stated within the hearing of the jury that "[m]y brother didn't have a stereo in his car." The court immediately retired the jury and advised the brother that what he did was improper and that if he disrupted the trial proceedings again, he would be excluded from the courtroom. Defense counsel requested that the jury be instructed to disregard the statement, to which the court agreed. He then moved for a mistrial, which the court denied. When the jury reconvened, the trial court admonished the jury as follows:

> Ladies and gentlemen of the jury, you will disregard the outburst that was made from an individual in the courtroom. You will disregard completely that remark. You will not consider that for any purposes whatsoever in your deliberations. That was not sworn testimony, nor is it evidence before you in connection with the case.

Appellant argues that the outburst disrupted proceedings and prejudiced Appellant by causing more empathy for the victim.

 It goes without saying that the victim's brother's unsworn statement was improper. *See* TEX. R. CRIM. EVID. 603. The question on appeal, however, is whether or not the possible harm caused by his remark was obviated when the court instructed the jury to disregard it. The statement must have been so inflammatory that its prejudicial effect could not reasonably be removed by such an admonishment. *Bower v. State,* 769 S.W.2d 887, 907 (Tex.Cr.App.1989), *cert. denied,* 492 U.S. 927, 109 S.Ct. 3266, 106

L.Ed.2d 611, *overruled on other grounds, Heitman v. State,* 815 S.W.2d 681 (Tex.Cr. App.1991). In light of the facts of this case, we conclude that the outburst was not so prejudicial that it could not be cured by the particularly thorough instructions from the trial court to the jury on the statement's total lack of evidentiary value. We hold that the trial court did not abuse its discretion when it denied Appellant's motion for mistrial. We overrule point of error eight.

In his ninth point of error, Appellant complains that the trial court should have granted his motion for mistrial after the State violated a motion *in limine.* At trial, the prosecutor asked a witness, "But for the fact that the Defendant was drunken and going the wrong way on the Loop, would this accident have happened?" The witness replied, "No, sir, it would not have." Appellant objected and the court sustained his objection. Appellant then requested an instruction to disregard, which the court granted. Appellant proceeded to move for a mistrial, which the court denied. The State continued with its direct examination of the witness and asked, "Would there have been a collision had the man not been in the lane—the Defendant not been in the wrong lane?" Appellant's attorney did not object.

 Both of the above-quoted recitations appear to bear on causation. When objection is made to inadmissible evidence, but the evidence then comes in without objection, error is waived. *Massey v. State,* 933 S.W.2d 141, 149 (Tex.Cr.App.1996). In addition, Appellant failed on appeal to tell us where in the transcript to locate the purportedly violated motion *in limine.* Because the motion is not in the record, we can only speculate as to the specific requirements of that motion. Consequently, we have nothing to review. Point of error nine is overruled.

In point of error ten, Appellant asserts that the trial court erred when it excluded the accident report from evidence. In Appellant's brief, he argues only that "[t]he trooper making the accident report testified at the trial in this matter. The court committed error in sustaining state's objection to admitting the accident report into evidence." Ap-

pellant fails to tell this court where in the record the ruling is located, why the report should have been admitted, or how the court abused its discretion in excluding it. Appellant neglects to produce any authority or argument as to this issue and thus fails to present anything for appellate review. TEX. R.APP. P. 74(f). We overrule point of error ten.

■ Point of error eleven complains that the trial court erred when it made an affirmative deadly weapon finding based upon the jury verdict. He argues that the court could not make an affirmative finding because although the indictment and charge stated that a motor vehicle could be a deadly weapon, they failed to specify the *type* of motor vehicle allegedly used as a deadly weapon. He cites *Hutson v. State,* 843 S.W.2d 106 (Tex. App.—Texarkana 1992, no pet.) for the proposition that the indictment/charge should have been more specific in its description of the motor vehicle, *e.g.* car, pickup, bus, *etc..* We disagree with Appellant's interpretation of *Hutson.* In *Hutson,* the court held that where the indictment alleged the use of a firearm but the verdict found defendant "guilty of involuntary manslaughter," without stating "as charged in the indictment," there was no affirmative finding that the offense involved the use of a deadly weapon. *Id.* at 107–08. Appellant provides no authority for his proposition that the indictment or charge was required to specify the type of motor vehicle used.

In the instant case, the verdict stated the following: "We, the jury, find the Defendant, Randy Clarence Matthews, guilty of the offense of involuntary manslaughter, as charged in the indictment." This verdict was in full compliance with *Hutson.* We overrule point of error eleven.

The judgment of the trial court is **affirmed**.