02-10-304 & 350-CR









 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 COURT OF APPEALS
 SECOND DISTRICT OF TEXAS
 FORT WORTH
  
 
 


 

NO. 02-10-00304-CR

 

 


 
 
 ALEX DARRELL MAYS
  
  
  
 THE STATE OF TEXAS
 
 
  
  
 V.
 
 
 APPELLANT
  
  
  
 STATE
 
 


 

 

AND

 

 

NO. 02-10-00354-CR

 

 


 
 
 EX
 PARTE ALEX DARRELL MAYS
 
 
  
 
 
  
 
 


 

 

----------

FROM THE 432nd
District Court OF Tarrant COUNTY

----------

MEMORANDUM
OPINION[1]

----------

I.  Introduction

          In
this consolidated appeal, appellant Alex Darrell Mays appeals his conviction
for sexual assault.  Mays also appeals the trial court’s denial of his “Motion
for Release Pending Appeal.”  We will affirm.

II.  Background

          Lisa
Flannigan[2] and Mays were friends.  On
the evening of September 20, 2008, Lisa arranged for her young daughter to stay
with her mother while she spent some time at Mays’s apartment watching television.
 According to Lisa’s testimony, when she attempted to leave, Mays walked her to
her car and took her cell phone from her.  To her surprise, Mays began to
scroll through her phone.  Mays took the phone with him to his apartment.  Lisa
said she followed him because she wanted her phone back.

          Once
they were both in the doorway, Mays grabbed Lisa by her throat and pushed her
into his apartment.  According to Lisa, she tripped and fell to the floor as
Mays began to repeatedly punch her.  Lisa freed herself from Mays, grabbed her
cell phone, and went into the bathroom and closed the door.  Mays then forced
his way into the bathroom.  Lisa’s mother called her cell phone at this time. 
Lisa was able to answer, but said that she could not say much:  “I was able to answer
. . .  And I tried to tell [my mother] real quick what was going on,
who I was with, but by that time [Mays] had snatched my phone and threw it
against the wall.”  Mays began to hit her again.

          According
to Lisa, she told Mays to “just let [her] go home.”  Mays told her to shut up
and threatened to punch her in her mouth.  He also told her “if he was going to
jail, it was going to be worth it.”  Lisa averred that Mays then told her that
he could kill her if he wanted and that no one would ever be able to find her. 
Mays demanded that Lisa remove her clothes, motioned for her to go to his
bedroom, and had sexual intercourse with her.  Lisa said that she complied
because she was scared of “getting beat up again, for everything.”  Mays then
told Lisa to take a shower in order to get his DNA off her.  Lisa again complied. 
The next morning, Lisa begged Mays to let her go.  He let her go.  After she
got home and saw her mother, Lisa went to the hospital with a friend.

          During
the State’s direct examination of Lisa, the following exchange occurred:

[Prosecutor]:  Where
was he hitting you at?

[Lisa]:   Everywhere. 
He just kept hitting and just punching me.  He didn't have to do that. . . . Why
would you do that?

 

[Defense Counsel]:   Your
Honor, we’re going to -- Judge, we’re going to object to the nonresponsiveness
--  to the nonresponsiveness as well as --

 

[Lisa]:   How can you
defend somebody like that?

 

[Trial
Court]:   Okay.  Ladies and gentlemen --

[Defense
Counsel]:   Judge --

[Trial Court]:   Just
a moment. . . . Ladies and gentlemen, I’m going to excuse you
to the jury room.  Please remember the Court’s instructions.  Thank you.

 

[Lisa]:   (Inaudible
Outburst).

 

[Trial Court]:   Do
not say another word.

 

          Outside
the jury’s presence, defense counsel made a formal objection.  The trial court
sustained the objection.  Defense counsel asked that when the jury returned,
the trial court instruct them to disregard Lisa’s outburst.  The trial court
agreed.  Defense counsel then moved for a mistrial.  The trial court denied the
motion.  The trial court then instructed Lisa not to address the defendant and also
instructed the State to talk to Lisa about her decorum.  The trial court then
took a ten minute recess.

Once
the jury returned, the trial court immediately instructed the jury:

Ladies and gentlemen
of the jury, at the time you were being excused, there was an objection that
was made by the Defense to a nonresponsive response given to a question.  I
sustained the objection.  Furthermore, you are instructed that the last
comments coming from the witness stand, you are to disregard.

 

The
trial continued.  The State called Lisa’s mother.  Lisa’s mother discussed her
phone call to Lisa that night.  Although unable to testify to what Lisa and
Mays said, Lisa’s mother said that she heard enough from a “man’s” voice and
Lisa’s voice during the brief call that she was disturbed.  She called the
police and filed a report.  Lisa’s mother also repeatedly attempted to call
Lisa after that call, both that night and the next morning.  But Lisa did not
answer until the next morning.  When Lisa’s mother finally did see Lisa that
next morning, she said that Lisa was distraught and covered in scratches and
bruises.  Lisa’s mother averred that Lisa went to the hospital with a friend.

The
sexual assault nurse, who examined Lisa, also testified and described Lisa’s
injuries to the jury.  The State also introduced numerous photos of Lisa,
depicting the scratches and bruises she sustained that night.

The
jury found Mays guilty of sexual assault, assessed punishment at ten years’
confinement and recommended that the sentence be suspended and that Mays be
placed on community supervision for ten years.  The trial court entered
judgment accordingly.

As a
condition of community supervision, the trial court ordered Mays to serve thirty
days’ confinement in jail.  Mays’s confinement began on July 1, 2010.  On
August 16, 2010, Mays filed “Defendant’s Motion for Release Pending Appeal.”  The
trial court denied the motion.  The record does not reflect when Mays was
released from jail, but both parties agree that Mays spent more than thirty
days in jail, that he eventually was released, and that he now lives with his
family in Jasper, Texas.  This consolidated appeal followed.

III.  Discussion

          A.      Outburst
During Trial

In
his first issue, regarding cause number 02-10-00304-CR, Mays contends that the
trial court erred by denying his motion for a mistrial after Lisa made her
emotional outburst in front of the jury in which she directed comments to Mays
and his counsel.  The State argues that the trial court cured the error by
instructing the jury to disregard the outburst.

We
review a trial court’s denial of a motion for mistrial under an abuse of
discretion standard.  Coble v. State, 330 S.W.3d 253, 292 (Tex. Crim.
App. 2010), cert. denied, --- S. Ct. ----, No. 10-1271, 2011 WL
1481330 June 20, 2011).  We uphold the trial court’s ruling if it was within
the zone of reasonable disagreement.  Id.  An outburst from a courtroom
bystander or witness that interferes with the normal proceedings of a trial
will not result in reversible error unless the defendant shows that a
reasonable probability exists that the conduct interfered with the jury’s
verdict.  Id.; Stahl v. State, 749 S.W.2d 826, 829 (Tex. Crim. App.
1988) (citing Landry v. State, 706 S.W.2d 105, 112 (Tex. Crim. App. 1985),
cert. denied, 479 U.S. 871 (1986)).  In the context of outbursts from
courtroom bystanders or witnesses, the trial judge’s instructions to disregard
are generally considered sufficient to cure the impropriety, because it is
presumed that the jury will follow those instructions.  Gamboa v. State,
296 S.W.3d 574, 580 (Tex. Crim. App. 2009).

In
this case, we conclude that Mays fails to prove that a reasonable probability
exists that Lisa’s comments interfered with the jury’s verdict.  The State
introduced numerous pictures of Lisa, depicting the injuries sustained during
Mays’s assault on her.  Lisa testified to the brutal manner in which Mays
violently attacked her.  The evidence shows that when Lisa attempted to leave
Mays’s house, he grabbed her cell phone from her.  Mays then grabbed her throat
and pushed her into his apartment.  Mays began to punch Lisa repeatedly.  After
Lisa managed to escape Mays’s grasp and hide in the bathroom, Mays forced his
way into the bathroom.  When Lisa asked Mays to “let [her] go home,” Mays
responded that he already knew he was going to jail, and “if he was going to
jail, it was going to be worth it.”

Mays
threatened to kill Lisa and explained that he could get away with it.  Lisa
testified that after this, the only reason she complied with having sexual
intercourse with Mays was because she was scared that Mays would assault her
again.  Afterwards, Mays required that Lisa shower in order to destroy any
potential DNA evidence.

During
her struggle, Lisa’s mother managed to call Lisa.  Although unable to testify
to what Lisa and Mays said, Lisa’s mother heard enough from a “man’s” voice and
Lisa’s voice during the brief call, which eventually disconnected, to call the
police.  Lisa’s mother also repeatedly attempted to call Lisa after that call,
but Lisa did not answer until the next morning.  When Lisa’s mother finally did
see Lisa the next morning, Lisa was distraught and covered in scratches and
bruises.  Lisa’s mother testified that Lisa went to the hospital with a friend
after she saw her.

In
light of the facts of this case, the nonresponsive statements directed at the
defendant and defense counsel were not so prejudicial that they could not be
cured by the trial court’s thorough instruction, which was given at the most
immediate moment the trial court had to instruct the jury.  And we presume the
jury abided by the instruction.  Id.  The trial court’s decision to deny
Mays’s motion for new trial certainly falls within the zone of reasonable
disagreement.  See Id. (holding that capital murder defendant not
entitled to a mistrial based on an outburst by the victim’s family member,
shouting “You did this for 200 dollars?”, during the testimony of a prosecution
witness); see also Brown v. State, 92 S.W.3d 655, 661 (Tex. App.—Dallas
2002) (holding that victim’s father’s outburst of “Give my son justice,
please[,]” during murder trial cured by trial judge’s instructions to disregard
his comment), aff’d on other grounds, 122 S.W.3d 794 (Tex. Crim. App. 2003),
cert. denied, 541 U.S. 938 (2004); Matthews v. State, 960 S.W.2d
750, 757 (Tex. App.—Tyler 1997, no pet.) (holding that outburst by manslaughter
victim’s brother contradicting defense attorney’s question about whether the
victim’s car stereo was on was cured by the judge’s instruction to disregard). 
We hold that the trial court did not abuse its discretion when it denied Mays’s
motion for mistrial.  We overrule Mays’s first issue.

B.      Trial
Court’s Denial of Mays’s Motion to Release Him from Incarceration

 

In
his second and third issues, regarding cause number 02-10-00354-CR, Mays
contends that the trial court erred by denying his motion to release him
pending this appeal and incarcerating him beyond thirty days as a condition of
his community supervision.  Through various arguments, Mays contends that the
incarceration violated his due process and equal protection rights.  Mays
acknowledges that since the filing of this appeal in relation to the trial
court’s denial of his motion, he has posted bail and is now residing with his
family in Jasper, Texas.

We
conclude that Mays’s second and third issues are moot.  See Ex parte
Bennet, 818 S.W.2d 199, 200 (Tex. App.—Houston [14th Dist.] 1991, no pet.) (holding
that when the premise of a habeas corpus application is destroyed by later
events, the legal issues raised therein are rendered moot); see also Ex parte
Guerrero, 99 S.W.3d 852, 853 (Tex. App.—Houston [14th Dist.] 2003, no pet.)
(holding that an appeal of a denial of an application for release is rendered
moot when appellant posts bond and is released from custody).  Thus, we dismiss
Mays’s second and third issues as moot.

IV.  Conclusion

Having
overruled Mays’s first issue and having dismissed his second and third issues
as moot, we affirm the trial court’s judgment and order.

 

 

 

BILL MEIER
JUSTICE

 

PANEL: 
WALKER,
MCCOY, and MEIER, JJ.

 

DO
NOT PUBLISH

Tex.
R. App. P. 47.2(b)

 

DELIVERED:  August 18, 2011









[1]See Tex. R. App. P. 47.4.





[2]The record reflects that
the complainant’s name is a pseudonym.  We are using that same pseudonym.