

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-10-00304-CR

ALEX DARRELL MAYS                                              APPELLANT

V.

THE STATE OF TEXAS                                                   STATE

**AND**

## NO. 02-10-00354-CR

EX PARTE ALEX DARRELL MAYS

----------

## FROM THE 432ND DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

---

[1]*See* Tex. R. App. P. 47.4.

# I. INTRODUCTION

In this consolidated appeal, appellant Alex Darrell Mays appeals his conviction for sexual assault. Mays also appeals the trial court's denial of his "Motion for Release Pending Appeal." We will affirm.

# II. BACKGROUND

Lisa Flannigan[2] and Mays were friends. On the evening of September 20, 2008, Lisa arranged for her young daughter to stay with her mother while she spent some time at Mays's apartment watching television. According to Lisa's testimony, when she attempted to leave, Mays walked her to her car and took her cell phone from her. To her surprise, Mays began to scroll through her phone. Mays took the phone with him to his apartment. Lisa said she followed him because she wanted her phone back.

Once they were both in the doorway, Mays grabbed Lisa by her throat and pushed her into his apartment. According to Lisa, she tripped and fell to the floor as Mays began to repeatedly punch her. Lisa freed herself from Mays, grabbed her cell phone, and went into the bathroom and closed the door. Mays then forced his way into the bathroom. Lisa's mother called her cell phone at this time. Lisa was able to answer, but said that she could not say much: "I was able to answer . . . And I tried to tell [my mother] real quick what was going on, who I

---

[2]The record reflects that the complainant's name is a pseudonym. We are using that same pseudonym.

was with, but by that time [Mays] had snatched my phone and threw it against the wall." Mays began to hit her again.

According to Lisa, she told Mays to "just let [her] go home." Mays told her to shut up and threatened to punch her in her mouth. He also told her "if he was going to jail, it was going to be worth it." Lisa averred that Mays then told her that he could kill her if he wanted and that no one would ever be able to find her. Mays demanded that Lisa remove her clothes, motioned for her to go to his bedroom, and had sexual intercourse with her. Lisa said that she complied because she was scared of "getting beat up again, for everything." Mays then told Lisa to take a shower in order to get his DNA off her. Lisa again complied. The next morning, Lisa begged Mays to let her go. He let her go. After she got home and saw her mother, Lisa went to the hospital with a friend.

During the State's direct examination of Lisa, the following exchange occurred:

[Prosecutor]: Where was he hitting you at?

[Lisa]: Everywhere. He just kept hitting and just punching me. He didn't have to do that. . . . Why would you do that?

[Defense Counsel]: Your Honor, we're going to -- Judge, we're going to object to the nonresponsiveness -- to the nonresponsiveness as well as --

[Lisa]: How can you defend somebody like that?

[Trial Court]: Okay. Ladies and gentlemen --

[Defense Counsel]: Judge --

3

[Trial Court]: Just a moment. . . . Ladies and gentlemen, I'm going to excuse you to the jury room. Please remember the Court's instructions. Thank you.

[Lisa]: (Inaudible Outburst).

[Trial Court]: Do not say another word.

Outside the jury's presence, defense counsel made a formal objection. The trial court sustained the objection. Defense counsel asked that when the jury returned, the trial court instruct them to disregard Lisa's outburst. The trial court agreed. Defense counsel then moved for a mistrial. The trial court denied the motion. The trial court then instructed Lisa not to address the defendant and also instructed the State to talk to Lisa about her decorum. The trial court then took a ten minute recess.

Once the jury returned, the trial court immediately instructed the jury:

Ladies and gentlemen of the jury, at the time you were being excused, there was an objection that was made by the Defense to a nonresponsive response given to a question. I sustained the objection. Furthermore, you are instructed that the last comments coming from the witness stand, you are to disregard.

The trial continued. The State called Lisa's mother. Lisa's mother discussed her phone call to Lisa that night. Although unable to testify to what Lisa and Mays said, Lisa's mother said that she heard enough from a "man's" voice and Lisa's voice during the brief call that she was disturbed. She called the police and filed a report. Lisa's mother also repeatedly attempted to call Lisa after that call, both that night and the next morning. But Lisa did not answer until the next morning. When Lisa's mother finally did see Lisa that next morning, she

4

said that Lisa was distraught and covered in scratches and bruises. Lisa's mother averred that Lisa went to the hospital with a friend.

The sexual assault nurse, who examined Lisa, also testified and described Lisa's injuries to the jury. The State also introduced numerous photos of Lisa, depicting the scratches and bruises she sustained that night.

The jury found Mays guilty of sexual assault, assessed punishment at ten years' confinement and recommended that the sentence be suspended and that Mays be placed on community supervision for ten years. The trial court entered judgment accordingly.

As a condition of community supervision, the trial court ordered Mays to serve thirty days' confinement in jail. Mays's confinement began on July 1, 2010. On August 16, 2010, Mays filed "Defendant's Motion for Release Pending Appeal." The trial court denied the motion. The record does not reflect when Mays was released from jail, but both parties agree that Mays spent more than thirty days in jail, that he eventually was released, and that he now lives with his family in Jasper, Texas. This consolidated appeal followed.

### III. DISCUSSION

#### A. Outburst During Trial

In his first issue, regarding cause number 02-10-00304-CR, Mays contends that the trial court erred by denying his motion for a mistrial after Lisa made her emotional outburst in front of the jury in which she directed comments

5

to Mays and his counsel. The State argues that the trial court cured the error by instructing the jury to disregard the outburst.

We review a trial court's denial of a motion for mistrial under an abuse of discretion standard. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010), *cert. denied*, --- S. Ct. ----, No. 10-1271, 2011 WL 1481330 June 20, 2011). We uphold the trial court's ruling if it was within the zone of reasonable disagreement. *Id.* An outburst from a courtroom bystander or witness that interferes with the normal proceedings of a trial will not result in reversible error unless the defendant shows that a reasonable probability exists that the conduct interfered with the jury's verdict. *Id.*; *Stahl v. State*, 749 S.W.2d 826, 829 (Tex. Crim. App. 1988) (*citing Landry v. State*, 706 S.W.2d 105, 112 (Tex. Crim. App. 1985), *cert. denied*, 479 U.S. 871 (1986)). In the context of outbursts from courtroom bystanders or witnesses, the trial judge's instructions to disregard are generally considered sufficient to cure the impropriety, because it is presumed that the jury will follow those instructions. *Gamboa v. State*, 296 S.W.3d 574, 580 (Tex. Crim. App. 2009).

In this case, we conclude that Mays fails to prove that a reasonable probability exists that Lisa's comments interfered with the jury's verdict. The State introduced numerous pictures of Lisa, depicting the injuries sustained during Mays's assault on her. Lisa testified to the brutal manner in which Mays violently attacked her. The evidence shows that when Lisa attempted to leave Mays's house, he grabbed her cell phone from her. Mays then grabbed her

6

throat and pushed her into his apartment. Mays began to punch Lisa repeatedly. After Lisa managed to escape Mays's grasp and hide in the bathroom, Mays forced his way into the bathroom. When Lisa asked Mays to "let [her] go home," Mays responded that he already knew he was going to jail, and "if he was going to jail, it was going to be worth it."

Mays threatened to kill Lisa and explained that he could get away with it. Lisa testified that after this, the only reason she complied with having sexual intercourse with Mays was because she was scared that Mays would assault her again. Afterwards, Mays required that Lisa shower in order to destroy any potential DNA evidence.

During her struggle, Lisa's mother managed to call Lisa. Although unable to testify to what Lisa and Mays said, Lisa's mother heard enough from a "man's" voice and Lisa's voice during the brief call, which eventually disconnected, to call the police. Lisa's mother also repeatedly attempted to call Lisa after that call, but Lisa did not answer until the next morning. When Lisa's mother finally did see Lisa the next morning, Lisa was distraught and covered in scratches and bruises. Lisa's mother testified that Lisa went to the hospital with a friend after she saw her.

In light of the facts of this case, the nonresponsive statements directed at the defendant and defense counsel were not so prejudicial that they could not be cured by the trial court's thorough instruction, which was given at the most immediate moment the trial court had to instruct the jury. And we presume the

7

jury abided by the instruction. *Id.* The trial court's decision to deny Mays's motion for new trial certainly falls within the zone of reasonable disagreement. *See Id.* (holding that capital murder defendant not entitled to a mistrial based on an outburst by the victim's family member, shouting "You did this for 200 dollars?", during the testimony of a prosecution witness); *see also Brown v. State*, 92 S.W.3d 655, 661 (Tex. App.—Dallas 2002) (holding that victim's father's outburst of "Give my son justice, please[,]" during murder trial cured by trial judge's instructions to disregard his comment), *aff'd on other grounds*, 122 S.W.3d 794 (Tex. Crim. App. 2003), *cert. denied*, 541 U.S. 938 (2004); *Matthews v. State*, 960 S.W.2d 750, 757 (Tex. App.—Tyler 1997, no pet.) (holding that outburst by manslaughter victim's brother contradicting defense attorney's question about whether the victim's car stereo was on was cured by the judge's instruction to disregard). We hold that the trial court did not abuse its discretion when it denied Mays's motion for mistrial. We overrule Mays's first issue.

### B. Trial Court's Denial of Mays's Motion to Release Him from Incarceration

In his second and third issues, regarding cause number 02-10-00354-CR, Mays contends that the trial court erred by denying his motion to release him pending this appeal and incarcerating him beyond thirty days as a condition of his community supervision. Through various arguments, Mays contends that the incarceration violated his due process and equal protection rights. Mays acknowledges that since the filing of this appeal in relation to the trial court's

8

denial of his motion, he has posted bail and is now residing with his family in Jasper, Texas.

We conclude that Mays's second and third issues are moot. *See Ex parte Bennet*, 818 S.W.2d 199, 200 (Tex. App.—Houston [14th Dist.] 1991, no pet.) (holding that when the premise of a habeas corpus application is destroyed by later events, the legal issues raised therein are rendered moot); *see also Ex parte Guerrero*, 99 S.W.3d 852, 853 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (holding that an appeal of a denial of an application for release is rendered moot when appellant posts bond and is released from custody). Thus, we dismiss Mays's second and third issues as moot.

## IV. CONCLUSION

Having overruled Mays's first issue and having dismissed his second and third issues as moot, we affirm the trial court's judgment and order.

BILL MEIER
JUSTICE

PANEL: WALKER, MCCOY, and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: August 18, 2011