In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00216-CR
_____

SAMAD SEFIANE, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

**On Appeal from the Criminal District Court**
**Jefferson County, Texas**
**Trial Cause No. 17-27943**

_____

**MEMORANDUM OPINION**

A jury convicted appellant Samad Sefiane of aggravated assault involving family violence and assessed punishment at twenty years of confinement. In three appellate issues, Sefiane challenges the trial court's denial of his motion for mistrial, the admission of the weapon into evidence, and the sufficiency of the evidence to prove that he and the victim were members of the same household. We affirm the trial court's judgment.

1

PERTINENT EVIDENCE

Bradley Brister testified that on January 21, 2017, he and his brother were staying at the dwelling where Sefiane and the victim, C.S., were also living. Brister testified he heard arguing and fighting, and when he entered the living room, he saw C.S. and Sefiane arguing. Brister explained that C.S. was sitting in a chair, and he saw Sefiane get up, grab a hammer, walk over to C.S., and strike C.S.'s head. According to Brister, Sefiane "went to swing again," and Brister then took the hammer from Sefiane and called 911. Brister explained that the hammer had a maul on one side and a splitting wedge on the other side. Brister testified that C.S. did not have anything except possibly a beer in his hands, and C.S. was not behaving aggressively.

When shown a hammer that the prosecutor identified as State's Exhibit 48, Brister testified that the hammer appeared to be the same one that he grabbed from Sefiane. Brister stated that the hammer was red and was a "splitting maul[.]" Defense counsel objected that "[t]here has been no chain of custody or testimony as to where and how and whatever. This witness has said it looks like the hammer, but there [are] no identifying marks. There [are] no initials. We would object at this time[.]" The trial judge overruled the objection and stated that he was admitting the hammer into evidence based upon Brister's affirmative answer to the question of whether the

2

hammer appeared to be the same one that was used at the time. Brister also stated that photographs of the hammer, which were admitted as State's Exhibits 44, 45, and 46, appeared to show the same hammer he grabbed from Sefiane's hand.

C.S. testified that he and Sefiane lived together with other individuals for three to five months in a home owned by their landlord. According to C.S., he was trying to get on his feet, and his landlord helped him. C.S. explained that he and Sefiane remodeled one of the rooms of the home together. C.S. testified that all of the people in the home "needed help, and we leaned on each other." According to C.S., the residents of the home shared a living room and a kitchen. C.S. explained that on the day of the incident, he fell asleep on the recliner, and the next thing he recalled was one of the residents shaking him, asking him if he was all right, and telling C.S. that an ambulance was on its way. C.S. testified that he required emergency brain surgery to reconstruct his skull.

The record reflects that after a break in the proceedings, defense counsel informed the court that one of the jurors was seen talking to the victim's mother. Defense counsel stated, "[i]t's been represented to me that the conversation did not deal with the case but was just some familiar conversation, friendly between the two parties, a juror and a potential witness." Defense counsel moved for a mistrial, stating that there was an appearance of impropriety. The prosecutor stated that he

had spoken with both the victim's mother and "the bailiff who was present while the conversation was going on." According to the prosecutor, the conversation involved the juror asking the victim's mother where she purchased an item of clothing, "and nothing about the case was discussed." The trial judge stated, "[p]eople can speak to each other just as long as the rule is not violated. That has its importance and the Court finds that there is no limit to what a perception could be by anyone." The trial judge denied defense counsel's motion for mistrial.

Detective Jerry Jackson of the Beaumont Police Department testified that he responded to the scene and investigated the offense. According to Jackson, the weapon used in the assault was a small splitting maul, and he testified that State's Exhibit 48 appeared to be the same one. Jackson testified that the tool constituted a deadly weapon. Officer Erin Smith, who also responded to the scene, testified that there was "a hammer or a maul, an axe-tip sledge hammer" in the living room of the residence. Smith testified that Exhibit 48 appeared to be the same or similar to the hammer that he saw that day.

Officer Daniel Norsworthy of the Beaumont Police Department testified that he responded to the scene. According to Norsworthy, he rode in the ambulance with Sefiane, and without questioning by Norsworthy, Sefiane voluntarily made statements at that time. A copy of a video recording containing Sefiane's statements

4

was admitted as State's Exhibit 49 and played for the jury. On the recording, Sefiane made statements regarding hitting C.S. with a hammer due to being angry about being punched and disrespected by C.S.

Sefiane testified that he struck C.S.'s head with a hammer, but he denied that the hammer in evidence was the same hammer. According to Sefiane, he struck C.S. because he feared for his life. Sefiane testified that C.S. had previously threatened him with physical harm. Sefiane testified that C.S. struck his face. Sefiane then grabbed the first object that he could reach and struck C.S.

ISSUE THREE

In issue three, Sefiane challenges the sufficiency of the evidence to prove that he and the victim were members of the same household as defined by section 71.005 of the Texas Family Code. *See* Tex. Fam. Code Ann. § 71.005 (West 2014). Because this issue, if sustained, would result in rendition, we address it first. *See Price v. State*, 502 S.W.3d 278, 281 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *see also* Tex. R. App. P. 47.1.

In evaluating the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 902 n.19 (Tex. Crim. App. 2010) (citing *Jackson*

5

*v. Virginia*, 443 U.S. 307, 319 (1979)); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). The jury is the ultimate authority on the credibility of witnesses and the weight to be given to their testimony. *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. [Panel Op.] 1981). A reviewing court must give full deference to the jury's responsibility to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. If the record contains conflicting inferences, we must presume that the jury resolved such facts in favor of the verdict and defer to that resolution. *Brooks*, 323 S.W.3d at 899 n.13; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). In addition, we determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Clayton*, 235 S.W.3d at 778.

Section 22.02 of the Penal Code provides that a person commits the offense of aggravated assault if he causes serious bodily injury to another or uses or exhibits a deadly weapon during the commission of the assault, and the offense is a first-degree felony if the actor causes serious bodily injury to a person whose relationship to or association with the defendant is described by section 71.005 of the Family Code. Tex. Penal Code Ann. § 22.02(a), (b)(1) (West 2019); Tex. Fam. Code Ann. § 71.005. Section 71.005 of the Family Code defines "household" as "a unit

6

composed of persons living together in the same dwelling, without regard to whether they are related to each other." Tex. Fam. Code Ann. § 71.005. If a statute's language is unambiguous, we must interpret the statute in accordance with the plain meaning of its language. *Sanchez v. State*, 995 S.W.2d 677, 683 (Tex. Crim. App. 1999). In determining plain meaning, we must read words and phrases in context and construe them according to the rules of grammar and usage. *Id*. We presume that the Legislature used every word for a purpose, and each word, phrase, clause, and sentence should be given effect if it is reasonably possible to do so. *Arteaga v. State*, 521 S.W.3d 329, 334 (Tex. Crim. App. 2017). "A statute is ambiguous when it is reasonably susceptible to more than one interpretation." *Id*.

The jury heard evidence that C.S. and Sefiane were living in the same household as tenants. We conclude that a reasonable factfinder could have found, beyond a reasonable doubt, that Sefiane and the victim were living in the same household when the offense occurred. *See* Tex. Penal Code Ann. § 22.02(b)(1); Tex. Fam. Code Ann. § 71.005; *Arteaga*, 521 S.W.3d at 334; *Sanchez*, 995 S.W.2d at 683; *see also Brooks*, 323 S.W.3d at 902 n.19; *Clayton*, 235 S.W.3d at 778. We decline Sefiane's invitation to apply case law from California and to apply the definition of "dwelling" found in the Texas Property Code rather than the ordinary, commonly

7

understood meaning of the term "dwelling."[1] *See Sanchez*, 995 S.W.2d at 683. The evidence is legally sufficient. Accordingly, we overrule issue three.

ISSUE ONE

In his first issue, Sefiane argues that the trial court erred by denying his motion for mistrial when "one or more of the jurors communicated with the victim's mother after trial commenced and the rule of sequestration of witnesses had been invoked." We review a trial court's denial of a motion for mistrial for abuse of discretion, and we will reverse only in extreme circumstances in which the prejudice was incurable. *Hawkins v. State*, 135 S.W.3d 72, 76-77 (Tex. Crim. App. 2004); *see also Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009) (concluding that mistrial is appropriate only in extreme circumstances "for a narrow class of highly prejudicial and incurable errors[]"). We must uphold a trial court's ruling on a motion for mistrial if it was within the zone of reasonable disagreement. *Coble v. State*, 330 S.W.3d 253, 292 (Tex. Crim. App. 2010).

Article 36.22 of the Texas Code of Criminal Procedure provides as follows, in pertinent part: "No person shall be permitted to converse with a juror *about the case on trial* except in the presence and by the permission of the court." Tex. Code

---

[1]Sefiane asked this Court to apply the definition of dwelling found in section 92.001 of the Texas Property Code. *See* Tex. Prop. Code Ann. § 92.001(1) (West 2014).

Crim. Proc. Ann. art. 36.22 (West 2006) (emphasis added). "The purpose of article 36.22 is to prevent an outsider from saying something that might influence a juror." *Ites v. State*, 923 S.W.2d 675, 677 (Tex. App.—Houston [1st Dist.] 1996, pet. ref'd). "When a juror communicates with an unauthorized person about the case at trial, we presume the defendant was injured." *Id.* To invoke this presumption, the defendant must show that the communication involved matters concerning his trial. *Id.* "The defendant bears the burden of establishing prejudice." *Matthews v. State*, 960 S.W.2d 750, 756 (Tex. App.—Tyler 1997, no pet.). The State may rebut the presumption by showing that the case was not discussed or that nothing prejudicial about the accused was said. *Ites*, 923 S.W.2d at 677.

As discussed above, when defense counsel raised the issue of the victim's mother speaking to a juror, defense counsel stated that it had been represented to him that the conversation was not about the case, and their interaction involved just "some familiar conversation[.]" Defense counsel argued that the conversation had resulted in an appearance of impropriety. The prosecutor stated that he had spoken with both the victim's mother and the bailiff, and he understood that the conversation did not involve anything about the case, but instead involved the juror asking the victim's mother about an item of clothing. In light of the undisputed statements by the prosecutor and defense counsel in open court that the conversation between the

9

victim's mother and the juror did not involve the case, we conclude that Sefiane failed to show that he was prejudiced by the small talk between the victim's mother and the juror. *See Matthews*, 960 S.W.2d at 756; *Ites*, 923 S.W.2d at 677. Therefore, the trial court did not abuse its discretion by denying Sefiane's motion for mistrial. *See Hawkins*, 135 S.W.3d at 76-77; *see also Coble*, 330 S.W.3d at 292; *Ocon*, 284 S.W.3d at 884. We overrule issue one.

## ISSUE TWO

In his second issue, Sefiane argues that the trial court erred by admitting the hammer into evidence when a proper chain of custody was not established. We review the trial court's admission of evidence under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990) (op. on reh'g). We will uphold the trial court's ruling as long as it was within the zone of reasonable disagreement. *See id.* at 391. A trial judge does not abuse his discretion when he admits evidence believing that a reasonable juror could find that it had been properly authenticated or identified. *See Pondexter v. State*, 942 S.W.2d 577, 586 (Tex. Crim. App. 1996). "To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Tex. R. Evid. 901(a).

Before admitting the hammer into evidence, the trial judge had heard Brister testify that the hammer was a red splitting maul, and that it appeared to be the same one he removed from Sefiane's hands after seeing Sefiane strike C.S. We conclude that Brister's testimony was sufficient to authenticate the hammer. *See id.* We further conclude that even if the trial judge had erred by admitting the hammer into evidence, in light of the entire record, including the testimony of Sefiane, the recording of Sefiane's statements while riding in the ambulance, and the testimony of Jackson and Smith, the admission of the hammer into evidence did not affect Sefiane's substantial rights. *See* Tex. R. App. P. 44.2(b); *Garcia v. State*, 126 S.W.3d 921, 927 (Tex. Crim. App. 2004). For all these reasons, we overrule issue two. Having overruled each of Sefiane's issues, we affirm the trial court's judgment.

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on March 26, 2019
Opinion Delivered June 12, 2019
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.